Schaefert v. The Chicago, Milwaukee & St. Paul R'y Co.

Schaefert v. The Chicago, Milwaukee & St. Paul R'y Co.

1. **Railroads**: COLLISION AT HIGHWAY CROSSING: CONTRIBUTORY NEG-
LIGENCE DEFEATS RECOVERY. In an action for damages caused by a
collision of defendant's train with plaintiff's team at a highway crossing,
although defendant may have been negligent in not giving the usual
signals, yet plaintiff cannot recover, if the negligence of the person driv-
ing the team contributed materially to the accident.

2. ———: ———: CONTRIBUTORY NEGLIGENCE: FACTS CONSTITUTING.
Where a person traveling on a highway, and approaching a known
crossing of a railway track, with knowledge that the view of an ap-
proaching train is to an extent obstructed, heedlessly permits his team
to trot over the highway, and makes no effort to look or listen for an ap-
proaching train for a distance of eigteen rods from the track, he is guilty
of such contributory negligence as will prevent him from recovering, if
a collision occurs, provided there are no circumstances which are calcu-
lated to distract his attention.

3. ———: SOUNDING WHISTLE AT CROSSING: NEGLIGENCE. Where an en-
gineer is approaching a highway crossing with his train at a rapid rate,
and, when near the crossing, but as soon as it is possible, he sees a team
approaching the track, and that a collision will certainly occur unless
something is done immediately to prevent it, the natural and usual thing
to do is to sound the whistle, and in so doing he is not guilty of negli-
gence, though the sound of the whistle, by frightening the horses, may
possibly contribute to the collision.

4. **Practice in Supreme Court**: ASSIGNMENT OF ERRORS: DEGREE OF
PRECISION REQUIRED. Where the assignment of errors clearly indi-
cates the instructions asked and refused, and that the court erred in re-
fusing them, this is sufficient, without pointing out more particularly
the error in the ruling.

*Appeal from Clayton Circuit Court.*

SATURDAY, DECEMBER 15.  .

THE plaintiff's minor son, when driving a team of horses,
hitched to a wagon, on a highway, attempted to cross the de-
fendant's road at the crossing. The team was struck by a pas-
sing train, and the plaintiff's son killed. To recover for the
services of his son during minority, and for the value of the
horses, harness and wagon, this action was brought.

The ground of recovery stated in the petition is the negli-

gence of the defendant. Trial by jury, verdict and judgment for the plaintiff, and defendant appeals.

*Noble & Updegraff* and *J. O. Crosby*, for appellant.

*Stoneman & Chapin* and *Robert Quigley*, for appellee.

SEEVERS, J.—The railway approaches the crossing on a curve in a northeasterly direction. The highway runs north

**1. RAIL-ROADS: collision at high-way crossing: contributory negligence defeats recovery.** and south. The plaintiff resides north of the railway, and from such residence the plaintiff's two minor sons, with a wagon and team, started to cross the railway track. Both were seated in the wagon, on which was a hay or straw rack.

The deceased son was driving, and the other son, Ernest, was seated on the right hand side of the wagon. Twenty rods distant from the crossing there is a gate on the highway. At from one to two rods south of the gate the team was stopped for the purpose of listening for the train. It could not be seen from this point, because of an intervening hill and growing corn, or, if this be not true, there was a conflict in the evidence in relation thereto.

Between the place where the stop was made and the track, an approaching train could not be seen from the highway, except at a place about five rods north of the track. If this is not true in fact, the jury were warranted in so finding. From the place where the team was stopped there was a descent in the highway, but, at the five rod point, there was no difficulty, so far as the descent in the highway was concerned, in stopping the team, and at such place a coming engine could be readily seen. When the team started from where it had been stopped near the gate, the horses were allowed to trot "pretty fast," or "quite fast," or "pretty good," as the witness who saw the transaction testified, and no stop whatever was made until the horses were quite near the track, when the engine was seen, and when the attempt was made to check them. The evidence is such that the jury might well find that the horses

had been in fact stopped when the whistle was sounded, and that they made a spring forward, and the wagon and horses were struck by the engine at about the whipple trees.

The plaintiff's deceased son had during the spring worked as a section hand for the defendant, and had ceased to so work for a time in order to help his father during harvest. When so working for the defendant, the deceased boarded at his father's. There is no conflict in the evidence in relation to the foregoing facts, and the jury found, in answer to a special interrogatory, that there was "a place four or five rods west of the railway track and crosssing, about the foot of the hill, where plaintiff's son, Fred., could have seen the train approaching, if he had stopped and looked." The evidence was conflicting as to whether defendant's employes sounded the whistle or rang the bell when the train was approaching the crossing.

It will be conceded that the jury could well find that they did not do so. Although the defendant may have been negligent in not giving the usual signals, this will not warrant a recovery, if the driver of the team was also negligent; that is, if his negligence materially contributed to the accident. This must be regarded as the settled doctrine in this state.

The plaintiff's son, while working for the defendant and boarding at home, must have acquired full information as to

2. ——: ——: the crossing, and the obstacles in the way of seeing
contributory
negligence: an approaching train from the highway. As there
facts constitu-
ting. is no evidence to the contrary, it must be presumed that he was in full possession of the senses of hearing and seeing, and that he was possessed of ordinary intelligence. He, therefore, could not possibly be ignorant in relation to all the facts as to the crossing. If the jury had found otherwise, the finding should have been promptly set aside. He knew he was about to cross the track, and was bound to exercise ordinary care, having in view such knowledge and all the facts and circumstances.

The stop made eighteen rods from the track, at a place

where the approaching train could not be seen, and failing to hear it, when the wind was blowing in the direction of the train, is not, under the circumstances, ordinary care. For, when he started toward the crossing, he permitted his team to trot "pretty fast" all the intervening distance, and not only did not stop and look and listen, until too late, but made no effort to do so, but carelessly and negligently, and with no regard for his own life, permitted the team to get quite near, (if their fore feet were not on the track,) before he looked for or saw the engine.

If the plaintiff's son had stopped four or five rods from the track and looked for the train, this accident would not have occurred; or, if he had not stopped, but looked for the train at the place where it could have been seen, the accident would not have occurred.

Where a person traveling on a highway and approaching a known crossing of a railway track, with knowledge that the view of an approaching train is to an extent obstructed, heedlessly permits a team he is driving to pass over such highway "pretty fast," or allow the horses to trot, and makes no effort to look or listen for an approaching train for a distance of eighteen rods from the the track, he is guilty of such contributory negligence as will prevent him from recovering, if a collision occurs, provided there are no circumstances which are calculated to distract his attention. Under the circumstances above stated, and the uncontroverted evidence in this case, we think ordinary care required that the deceased should have stopped and looked or listened at some place between the place where the team was stopped and the track. There was nothing to prevent his doing so, and there was nothing to distract his attention.

The views above stated are in accord, we think, with the great weight of authority in other states, and with the following cases decided by this court. *Artz v. C., R. I. & P. R. R.*, 34 Iowa, 153; *Haines v. Illinois Central Railway Co.*, 41 Id., 227; *Benton v. C. R. R. of Iowa*, 42 Id., 192;

*Starry v. D. & S. W. R. R. Co.*, 51 Id., 419; *Funston v. C., R. I. & P. R. R. Co.*, 61 Id., 452.

It will be conceded that a traveler on a highway, when approaching a railway crossing, is not under all circumstances required to stop and look and listen for an approaching train, but, if due and ordinary care does not require him to do so under the facts in this case, the rule should be at once abrogated. Under the evidence, the plaintiff is not entitled to recover, and the jury should have been so instructed.

If we understand counsel for the plaintiff, they insist that, as the track could not be seen, although the engine and train could, plaintiff's son was excused from stopping and looking. But we do not think this is so. It was the engine and train which collided with the wagon and team, and it is immaterial whether the track could be seen or not, as the plaintiff's son had knowledge of its existence and location, and also knew that trains were likely to pass along it. The train was running at a speed of about eighteen miles an hour, and it was absolutely impossible to check it after the engineer saw, or could with the utmost diligence have seen, the team on the highway, before the collision took place.

When the engineer saw the team, the whistle was sounded twice. This, as we suppose, was the call for brakes, but counsel for the plaintiff insist that if it had not been done the collision would not have occurred. Possibly this is so, but the question is, was the engineer negligent in thus sounding the whistle. We think not. In the first place, the engineer saw the horses close to the track, and that a collision would certainly occur, unless something was done immediately to prevent it. To sound the whistle under the circumstances in the pending emergency was, we think, prudent and proper. There was no time for reflection. It was the usual thing to do, and, if the engineer had failed to do so, we think he possibly would have been negligent, if a collision had occurred, because of such failure. But, be this as it may, we are not prepared to hold that a

3. ——: sounding whistle at crossing: negligence.

person is negligent who does an act in an emergency like that presented to the engineer, when there is not a moment's time for thought or reflection.

It is said, the errors assigned are not sufficiently specific. We are of the opinion that they are in the usual and ordinary

4. PRACTICE in supreme court: assignment of errors : degree of precision required.

form, and sufficient in this respect. Counsel say: "What is required to be specifically pointed out is not the particular instruction objected to, but the particular error ruled upon, as whether the instruction complained of is obscure, misleading, wrong as an abstract proposition, or not applicable to the facts, etc." We do not think such has been the practice, or that the statute so requires. In this case the errors assigned indicate clearly the instructions asked and refused, and that the court erred in refusing them. This, we think, is sufficient.

REVERSED.