PENCE v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y Co.

1. **Railroads**: COLLISION AT HIGHWAY CROSSING: CONTRIBUTORY NEGLIGENCE. Where defendant was operating two lines of railway, which ran near to and parallel with each other, and plaintiff, who was familiar with the highway crossings in question, having passed over them many times, and with the time when the trains in question were accustomed to pass, was driving along the highway which crossed both tracks, and, though at a point about fifty feet from the first track he might have seen an approaching train on that track for thirteen hundred feet to the westward, he yet failed to see it, and there was no evidence that anything occurred at the time to distract his attention, and he drove across the first track, barely escaping a collision, but his horses became frightened and unmanageable, and in their fright ran or were driven upon the second track, where his wagon was struck by a passing train upon that track, and plaintiff himself was injured, *held* that the crossing of the two tracks was but one transaction, and that plaintiff was guilty of such contributory negligence in driving upon the first track, without stopping and looking for the approaching train, as to defeat his recovery for the injury sustained upon the other track, and that, too, notwithstanding the view of the approaching train on the second track was obscured by the train on the first track. See *Schaefert v. C., M. & St. P. R'y Co.*, 62 Iowa, 624.

## *Appeal from Polk Circuit Court.*

### WEDNESDAY, JUNE 4, 1884.

THIS is an action for a personal injury, caused by a collision of one of defendant's trains with a wagon in which plaintiff was riding, at or near a public crossing of defendant's railroad track. There was a trial by jury, which resulted in a verdict and judgment for the plaintiff for $10,000. The defendant appeals.

*Wright, Cummins & Wright,* for appellant.

*Parsons & Runnells,* for appellee.

ROTHROCK, CH. J.—I. On the evening of October 30, 1878, at about dark, the plaintiff and one Crews left Des Moines, in a common road wagon drawn by a team of mules, to go to the plaintiff's home in the eastern part of Polk county. The team and wagon belonged to the plaintiff, and were driven by Crews, who was plaintiff's tenant and worked for him. For a few miles out of Des Moines, the tracks of the Chicago, Rock Island & Pacific Railroad and of the Keokuk & Des Moines Railroad run parallel and, at places, near to each other, and both railroads were then operated by the defendant. The plaintiff and Crews were traveling upon a highway which runs parallel with the railroad tracks, and crosses them in two or more places. In going east on the highway, they crossed the railroad tracks from the north to the south side, near the city limits. From that crossing they proceeded in an easterly direction on the south side of the railroad tracks to a second crossing, where they approached the track of the Keokuk & Des Moines road in a northeasterly direction, and crossed over the same immediately in front of a freight train going east. The team became frightened and unmanageable, and ran along the highway to the other railroad track, a distance of about two hundred and sixteen feet,

where it came in collision with a freight train going east on that track. By the collision one of the mules was killed, the wagon was broken, and the plaintiff severely injured.

The plaintiff claims that the defendant was negligent in several respects, including the construction of the two railroad tracks in close proximity, the great rate of speed at which the trains were running at the time of the accident, and the failure to whistle for the crossings, and the failure of the engineer of the train upon the northern track to avoid the injury after he discovered the plaintiff's danger. Upon the question as to the negligence in running the trains, there is a conflict in the evidence. The great preponderance is that the trains were not running at an unusual or inordinate speed, and that the usual signals for the crossings were given. And the evidence is undisputed that the engineer of the train on the northern track did not see the team and wagon in time to avoid the accident; and there is no proof that there was anything in the actions of the team to indicate to the persons on board the train that plaintiff and Crews had lost control of it. There is no evidence to dispute the statement of the engineer, that it would have been impossible to check the speed of the train after he discovered the team, so as to have permitted it to cross the track in front of the train, and thus avoid the accident.

The question, then, as to the failure of the engineer on the northern train to prevent the accident, after discovering the danger, is practically out of the case.

It appears in evidence, without dispute, that the headlights upon both of the engines were burning brightly, and that the plaintiff was perfectly familiar with the crossing. He stated in his testimony, that he had traveled the road "hundreds, if not thousands, of times," and that he traveled it a great many times during the year preceding the accident, and that he knew the trains on the railroads were accustomed to pass in the evening.

His account of the accident, as detailed by him in his testimony upon the trial, is as follows:

"As I drove along that night, I heard no train. It was very dark, and the wind was blowing from me, and we were anxious to know whether the trains had gone ahead of us. We wanted to be certain, and we stopped just after we had passed the line that runs south from where we travel directly east. That would be about seventy-five yards directly south of the track through Greaver's way; may be not more than fifty. We thought we could hear it there. We could not hear it, and drove on. We stopped again before reaching the railroad track, and it was pretty dark, but we thought it was something near the cattle guard east of Greaver's. Just before crossing was the last stop we made. The last stop would be fifty or sixty feet away from the railroad crossing, the way the road runs.

"We neither saw nor heard the train. We then started on; supposed we were going over without trouble, and about the time we were near to the crossing there was a light flashed and we felt a jerk. The light flashed again, and by this time we were just on the road, and we were going off of it, and it seemed by the brightness of the light, of course, very near to us. I drew myself up like to see—for I thought they would have hit the wagon—to see how much they had missed us. Up to that time I had seen a light—I had not heard the train. I knew the light was there, and was expecting it to hit the wagon. If I heard it just that moment I do not suppose I would have noticed it, for I expected that the train would hit the hind wheels of the wagon before we could get over the track; but we got over without being hit, and, as I threw my head back to see whether they had hit us or not, I saw the train on the other road.

"Mr. Crews was driving. I then saw we were between the tracks, and told him to give me a line and I would help him. He gave me one line, and I tried to hold one and he the other. The next we found the train kept them in motion, and we

did not get them stopped. The light was so glaring we could not hardly tell what shape they were in, except that I found they were in motion. After the time I saw we were in motion I concluded that I would look around and see where we were going. I saw the headlight of the cars on the north road about fifteen to twenty—might have been thirty—feet, and saw that we were getting pretty close to it. I concluded I would make one more effort to see if I could not turn the team from it, and this left foot was braced against the end of the wagon gate. The pressure was not very good, but it was square against the end gate—the right foot. I was making all the efforts to hold the mules that I could make, and at that time we were struck.

"Up to the time that we had crossed the south track I did not hear a bell or whistle upon either train sound. My hearing is reasonably good; not as good as some men. I can hear a noise. I think I could have heard a whistle or a bell if it had sounded—no trouble about it. I do not think they sounded a bell or whistle. We tried very hard to hear it and could not do it. My recollection is that I first heard the whistle upon the north train just about the time we found that we were not going to be hit. The whistle of the south train had so much effect upon the mules that we could not manage them. I do not think the engine on the south road was more than thirty feet from us when it sounded the whistle We did our utmost to keep the mules from going on the north track."

It should be stated here that the wagon road crosses the railroad tracks diagonally, and that, while the distance from one track to the other by the road is two hundred and sixteen feet, the distance direct from one track to the other is about eighty feet, and the train on the southern track was somewhat ahead of that on the northern track. The plaintiff testifies that his team was traveling three or four miles an hour, and could have been stopped in five or six feet, and that, if he had

seen the headlight when twenty or thirty feet away from. the southern track, he could surely have stopped the team.

It was a material question, then, for the the jury to determine, whether or not the plaintiff or Crews could have seen the headlight in time. to have checked the team and allowed the train on the southern track to pass, without attempting to pass in front of it. The evidence shows that at a point in the highway, fifty feet from the southern track, the headlight of an engine on that track would be visible for about thirteen hundred feet to the west.

At the instance of the defendant, the following interrogatory, among others, was propounded to the jury: "How far westerly from the crossing of the Keokuk & Des Moines track (the southern track) would an engine or its headlight be visible to a person in a wagon fifty feet from said crossing westerly on the highway?" The answer to the question by the jury was in these words: "About thirteen hundred feet." The finding could not have been otherwise, without a total disregard of the evidence. It also conclusively appears that, as a traveler approached the crossing, an engine and its headlight would be in full view from that point to the crossing, at any point on the railroad track for thirteen hundred feet to the west.

It is unnecessary for us to repeat what has so often been said by this court as to the negligence of a person who approaches a railroad crossing, where there is an unobstructed view of the track, and where there is nothing tending to confuse the traveler or divert his attention, so as to excuse him from looking or listening for an approaching train. For the latest expression upon that question, see *Schaefert v. The C., M. & St. P. R'y Co.*, 62 Iowa, 624. It is everywhere held that, for his failure to look and listen, he is chargeable with such negligence that he cannot recover if injured by a train upon the track. In this case, it is true that the plaintiff escaped injury from a train on that track. But his escape, according to his own testimony, was an exceedingly narrow

one. It is not claimed that there was anything that diverted his attention, or that there was any semblance of excuse for not seeing the approaching train thirteen hundred feet away. It is true, it is claimed by plaintiff's counsel that the traveled track has been changed since the accident, and that, as the road was then traveled, the headlight of an engine could not be seen thirteen hundred feet to the west; and it is claimed that there were other obstructions to a view of the track which have since been removed. But these claims are not supported by the evidence, and the jury, in answer to the above interrogatory, make no such qualification. If the plaintiff is to be understood as claiming in his testimony that an engine and its headlight could not be seen from his wagon in the road, thirteen hundred feet to the westward, upon the Keokuk & Des Moines track, his testimony would be insufficient to raise a conflict upon the question, for his statement would be against actual demonstration by measurements and observations made with an engine upon the track. If, then, the plaintiff was negligent in not seeing the approaching train upon the southern track, the question remaining to be determined is, notwithstanding the negligence of the plaintiff in making the crossing, is he entitled to recover because the engineer blew the whistle at about the time the plaintiff made the crossing? The preponderance of the evidence upon that question is, that the whistle was not sounded at the crossing. And the engineer, and others upon the train, all testified that they did not see the plaintiff and his wagon until after he had crossed the southern track, and until just about the time of the collision. Now, whether it was negligence to sound the whistle, we need not determine, because, if sounded, it was without any reference to the wagon being on or near the crossing, as it was not seen. Indeed, the great preponderance of the evidence is that, if the whistle was sounded at all, it was at a point some place west of the crossing. However this may be, we think the crossing of the one track, and the attempt by plaintiff to cross the other, were all parts of

Pence v. The Chicago, Rock Island & Pacific R'y Co.

one act. The jury found, in answer to special interrogatories, submitted to them at the instance of the plaintiff, that the plaintiff, before he crossed the southern track, could not see the train on the northern track, because the train on the southern track obstructed his view. And this must have been the theory upon which the jury excused the plaintiff for not seeing the train on the northern track. But this would not excuse him from seeing the train on the southern track, and waiting until it passed to see if there was danger in crossing the northern track.

We have discussed the general features of this case without giving the testimony in detail, and our conclusion is that there was no evidence upon which to found a verdict for the plaintiff. The plaintiff's man, Crews, was not a witness upon the trial. The evidence shows that the plaintiff was sometimes addicted to intoxication, and he admits that he took medicine upon that day, in which were small quantities of whisky. There was a jug of whisky in the wagon, but plaintiff claims that neither he nor Crews drank therefrom. If it were not for his positive denial that he was intoxicated, his rashness in driving upon the southern track, and barely escaping contact with the engine, could be readily accounted for.

There are many other questions discussed by counsel, which we need not determine. We may say, however, in view of a new trial, that the proof of a rule requiring brakemen to ride upon the top of the train was improperly allowed, because it does not appear that the accident was in any way attributable to a violation of this rule.

In our opinion, when it is conceded, as it must be, that the plaintiff had an unobstructed view of the southern track for thirteen hundred feet, for the last fifty feet before he reached the track, and his attention was in no way diverted from seeing it, he cannot recover.

REVERSED.