Margaret Tierney, Administratrix, Appellee, v.
Chicago & Northwestern Railway
Company, Appellant.

84  641
92  242

84  641
96  705
97  607

84  641
f110 205

84  641
122  221

1. **Personal Injury:** CONTRIBUTORY NEGLIGENCE: EVIDENCE. In an action to recover damages for causing the death of the plaintiff's intestate through the alleged negligence of the defendant, it appeared from the plaintiff's evidence that the plaintiff's intestate, while crossing one of the defendant's tracks in the town of C., known as the "new

house track," was run over by a flat car and box car moving of their own momentum upon that track; that the deceased was familiar with the crossing, knew that no flagman was kept there, and knew that cars were liable to be moved upon that track at any time; that the evening was cloudy, and there were engines fired up and emitting smoke in the vicinity, so that the view of approaching cars would be partially obscured, and that the deceased, though somewhat deaf, approached the track in question looking downward. *Held*, that the court should have directed a verdict for the defendant because of the contributory negligence of the deceased.

2. ———: ———: INSTRUCTIONS TO JURY: VERDICT. The court having instructed the jury that it was the duty of the deceased to look and listen for approaching trains of cars before crossing the track, and that if they found that, before stepping upon the track in front of the moving cars, he saw or could have seen them approaching by merely looking, then he was negligent, and their verdict should be for the defendant, *held*, that under the evidence, as above recited, a verdict for the plaintiff was contrary to the instructions.

3. Railroads: NEGLIGENCE: ABSENCE OF FLAGMAN AT CROSSING. The cars by which the deceased was struck were being moved by their own momentum at the time, after a "kick" from an engine, with no person upon them to control their movement or give warning of their approach, and there was no flagman at the crossing. *Held*, that the court properly submitted to the jury the question whether under all the circumstances of the case the defendant was negligent because of these facts.

*Appeal from Clinton District Court.*—HON. A. HOWAT, Judge.

TUESDAY, FEBRUARY 9, 1892.

THE plaintiff states as her cause of action "that on the eighth day of November, 1887, the said Peter Tierney, while walking west along the north side of Tenth avenue, in the city of Clinton, across one of the tracks of the defendant, and, while in the exercise of ordinary care, was killed, through the negligence of the defendant and its servants. The acts of negligence complained of are that the defendant's employes ran a flat car and box car together on one of its tracks across Tenth avenue by the momentum they had acquired by being kicked upon said track, and at a high rate of

speed, without brakes being set, and without anyone in charge of said cars, and without giving any warning of the approach of said cars, and without having any flagman stationed to warn persons of the approaching cars." The defendant answering denied generally and specifically each and every allegation of the petition. The case was tried to a jury, and at the close of the testimony on behalf of the plaintiff the defendant moved for a verdict upon the grounds that there was no evidence that the defendant was guilty of any negligence which caused the decedent's death, that the undisputed evidence showed the deceased was guilty of contributory negligence, and that there was no evidence to support a verdict for the plaintiff. This motion was overruled, and, no further evidence being offered, the case was submitted to the jury, and a verdict in favor of the plaintiff for nineteen hundred and ninety-nine dollars and ninety-nine cents, the amount asked in the petition, and answers to certain special findings returned. The defendant moved for a new trial upon the grounds, among others, that the court erred in overruling the defendant's motion for a verdict, in giving certain instructions, and that the verdict is contrary to the evidence and to the instructions given, and not supported by the evidence. This motion was overruled, and judgment entered upon the verdict. The defendant appeals.—*Reversed.*

*Hubbard & Dawley*, for appellant.

*Walsh & Sutton* and *J. S. Darling*, for appellee.

GIVEN, J.—I. The only issues submitted to the jury were as to the alleged negligence of the defendant and care on the part of the deceased. The other issues were conceded to be proven. The appellant's contentions on this appeal are that the court erred in overruling its

1. PERSONAL injury: contributory negligence: evidence.

motion for a verdict on the ground of contributory negligence, and its motion for new trial upon the same ground, and because the verdict is contrary to the instructions and the evidence. The appellant also complains of the giving of the ninth paragraph of the charge.

Reasonable care upon the part of the deceased is an essential element of the plaintiff's cause of action, without which she cannot recover. The presence or absence of such care may be shown by inference from the facts and circumstances proven, or by direct evidence. Under familiar rules of the law as announced in repeated decisions of this court, if there was no evidence showing care upon the part of the deceased, or if the evidence shows without conflict that the deceased was guilty of negligence contributing to his death, the court should have directed a verdict for the defendant. If there was a conflict in the evidence, then the question was properly for the jury. If the facts and circumstances proven are of such nature that reasonable persons, unaffected by bias or prejudice, might disagree as to the inference or conclusion to be drawn therefrom, there may be said to be a conflict. For the cases on this subject, see McClain's Digest, under the head of "Practice, Directing the Verdict."

We think the evidence not only fails to show that the exercise of care on the part of deceased may be inferred from the facts and circumstances proven, but that it shows affirmatively, and without conflict, that he was guilty of negligence directly contributing to cause his death. He was bound to exercise the care that an ordinarily careful, prudent person would have exercised under the same circumstances. The circumstances are, that on the evening of the eighth day of November, 1889, at about fifteen or twenty minutes after five o'clock, the deceased was walking westward on the north side of Tenth avenue, in the city of Clinton, and when crossing one of the defendant's tracks,

known as the "New House Track," was run over by a flat car and box car moving northward, of their own momentum, upon that track; there being no person or signal upon said cars to control their movement or give warning of their approach, and no flagman at the crossing. The evening was cloudy, and there were engines fired up and emitting smoke in the vicinity. The deceased was familar with the crossing, and knew that no flagman was kept there; knew that cars were liable to be moved upon that track at any time; knew that he was somewhat deaf, and what his opportunities were for seeing and hearing the approach of cars. While he had a right to proceed upon the assumption that the defendant would exercise care in the movement of cars, yet it was his duty to use his sight and hearing to avoid danger. If, by reason of deafness or noises in the vicinity, he could not depend upon his hearing, it was his duty to be the more vigilant in seeing; and if, from the darkness or smoke, he could not see, then the more cautious in going upon the track. That he did not see the cars until too late to avoid the danger is evident from the fact of the accident; for, had he seen them, he would certainly have stopped short of the crossing, or made the step or two that would have carried him out of danger.

It is argued that he was not negligent in not seeing the cars, because of the darkness and smoke. Four witnesses who saw the accident, and who were in no better position to observe than he, agreed in saying that they saw the cars approaching him when some eighty feet or more away. Mrs. Curtis, who was walking in the same direction, and about ten feet in the rear of Mr. Tierney, saw the cars when the first car came on Tenth avenue, some eighty feet from where Mr. Tierney was run over. Mr. Taylor, who came out of the switch house and walked in the same direction, and within fifteen feet of Mr. Tierney, saw the cars coming towards him. He says: "It was light enough

at that time so that at the distance of a block away I could have seen a car. * * * I think I could have looked for two blocks—six hundred feet—and seen a car." Mr. Huffman, who was some distance away, saw the cars strike Mr. Tierney. Mr. Frank Williams testifies that he stepped from the Omaha passenger train, just starting west, fifty or sixty feet from where Mr. Tierney was killed and helped to carry the body into the switchhouse; that he noticed the switch engine that kicked the cars in on the house track at Third street; that there was smoke issuing from the engine of the Omaha train and rolling along the ground up at Third street. He states that he could see the switchengine at Third street plain enough to know it. William T. Williams, who was within fifteen feet of where Tierney was knocked down, testifies that the switchengine was at that time about west of Third street; that he could see the cars distinctly. None of the witnesses testify that Mr. Tierney's view of the cars was obstructed by the smoke, while the positive testimony of those who did see the cars approaching shows beyond question that there was no smoke to prevent Mr. Tierney from seeing them. It is urged that these witnesses were enabled to see the approaching cars by the light of a lantern that W. T. Williams had brought from the switchhouse. Mr. Williams says: "I had my lighted lantern in my hand when I walked out of the switchhouse towards the cars. As I came out of the switchhouse I heard a couple of exclamations like, 'Look at that man!'" He also states that he did not see the car strike Mr. Tierney. "He was up against the cars when I saw him." It is evident Williams came from the switchhouse about the moment that Tierney was struck, and after the witnesses had seen the cars approaching; but, if they were able to see the cars by reason of his lantern, Mr. Tierney could have seen then by the same light. Mrs. Curtis, who with

another lady was walking in the same direction, states
that Mr. Tierney was looking down.   "I did not notice
him look either to the right or the left.   I was not
looking at him, particularly, until he got near the
track.   I did not see him move his head any way.   I
certainly could have seen him if he had moved it.
*   *   *   After he stepped over the first rail, then he,
it seems to me, first noticed the car.   Then he turned
and threw up his hands against the car.   That was the
first time I saw him turn his head."   Mr. Taylor, in
answer to the question whether he noticed Mr. Tierney
turn his head after he passed the switchhouse,
answered:   "No, sir; he did not—not that I know of.
*   *   *   I had him within my view all the time.   I
noticed he had his head bent down.   I did not pay any
attention to him until he was pretty near the track,
*   *   *   two steps from the track.   *   *   *   Then
my attention was attracted to him."   Certainly but
one conclusion can be deduced from this testimony,
and that is that Mr. Tierney attempted to cross that
track without looking to see whether the cars were
approaching or not, when looking would have disclosed
to him the fact of their approach in ample time to have
avoided the danger.   There is no evidence whatever
tending to show that he did look, and consequently no
conflict on that subject.   It is argued that he may have
looked without turning his head—an argument that is
fully answered by the fact that if he had looked he
would have seen the danger and avoided it.

II. The appellant's motion for a new trial was
upon the grounds, among many others, that the ver-
dict is contrary to the evidence and to the
instructions, and not supported by the
evidence.   The court instructed that, "as
a general rule, it is the duty of a person about to cross
a railroad track to look and listen for approaching
trains of cars.   A failure to do this is negligence."

2. _____: _____:
instructions to
jury: verdict.

There is nothing in the case to bring it within the exceptions to this general rule as stated in the next paragraph of the charge. The court also instructed: "If you find by a preponderance of evidence that the deceased, before stepping upon the track in front of the moving cars, saw or could have seen them approaching, by merely looking, then he was negligent, and your verdict will be for the defendant." We have seen that the evidence not only failed to show care on the part of deceased, but shows affirmatively, without conflict, and beyond any reasonable question, that by looking he could have seen the cars in time to avoid the danger, and that he failed to look. This, according to the instructions which the jury were bound to follow, was negligence such as to defeat the plaintiff's right to recover. We are mindful of the rule that this court will not interfere with the decision of the court below in refusing a new trial on account of the insufficiency of the evidence where there is a conflict, and of the presumptions that are so properly indulged in favor of the rulings of the lower court. Where, however, there is an absence of testimony to an essential element of recovery, and where, as in this case, the contrary is proven without conflict, and the verdict is therefore contrary to the evidence and instructions, the duty of this court is to reverse. The principles of law governing in such cases as this are so familiar and often repeated in the decisions that we have not deemed it necessary to notice the numerous cases cited by counsel, nor to cite any of the many supporting the principles of law upon which our conclusions rest.

III. The appellant complains of the ninth paragraph of the charge, wherein the court instructed the jury to determine whether ordinary care required, under all the circumstances of the case, that the defendant should have had a flagman at the crossing, or should have had someone upon the cars, "and whether, under all the cir-

3. RAILROADS: negligence: absence of flagman at crossing.

cumstances, the defendant exercised ordinary care and
prudence in running said cars in the manner in which
it did.    The appellant contends that there is no statute
or ordinance requiring a flagman or gates; it is not of
itself negligence to omit to maintain one; and that in
such case a jury is not the proper tribunal to determine
whether a flagman or gate should be maintained.    It
is conceded, and such is the uniform holding, that evi-
dence of the presence or absence of a flagman or gate
is proper to be considered by the jury upon the ques-
tion of the defendant's prudence or negligence in moving
cars at the particular time and place in question.    The
instruction is in harmony with this rule.    It submits a
fact of the absence of a flagman and of some one upon
the cars to be considered, in connection with the other
circumstances, in determining whether the defendant
had exercised ordinary care in moving the cars in the
manner in which he did.    The instruction being justi-
fied by the conceded rule, we do not determine whether,
in the absence of statute or ordinance, a jury would
be authorized to pass upon the necessity of a flagman
or gate at a particular crossing.

For the reasons already stated, we reach the con-
clusion that the judgment of the district court must be
REVERSED.