| 97 | 603 |
| [132 | 34 |

JOHN HINKEN, Appellant, v. THE IOWA CENTRAL RAIL-
WAY COMPANY.

**Contributory Negligence.** It appeared that plaintiff, while crossing
defendant's tracks near a station, was struck by the north-
bound train; that the south-bound train was then standing on the
track, waiting for the other to pass; that plaintiff saw the south-
bound train, and knew the other train was due; that, before
reaching the tracks, plaintiff had looked, but had seen no train
coming, because of obstructions; that, after reaching the tracks,
there was a clear view in the direction of the approaching train,
but plaintiff did not again look. *Held*, that plaintiff was guilty
of contributory negligence, precluding recovery.

*Appeal from Franklin District Court.*—HON. S. M.
WEAVER, Judge.

FRIDAY, APRIL 10, 1896.

ACTION at law to recover damages for personal
injuries sustained by plaintiff, in an accident at a
street crossing, in the town of Hampton. Trial to a
jury. The court directed a verdict for defendant, and
plaintiff appeals.—*Affirmed.*

*Taylor & Evans* and *E. P. Andrews* for appellant.

*Anthony C. Daly, J. H. Scales, D. W. Dow*, and
*Theo. Bradford* for appellee.

DEEMER, J.—The accident in question happened
at a street crossing, in the town of Hampton, about a
quarter past 12 o'clock, on the twenty-eighth day of
October, 1892. Appellant is a bricklayer by profes-
sion, and on the date of the accident, was at work in
the southwestern part of the town, west of, and sev-
eral blocks distant from, the tracks of the defendant
railway. His residence was northwest of the place

where he was at work, and east of the tracks. About noon he quit work, and started on foot for his home. The wind was from the northwest, and quite a gale was blowing. At the place where he attempted to cross the right of way of the railroad company, there are four tracks. The first, on the west, was called the "stock-yard track," the next, the "main line," the third, the "passing track," and the fourth, another side track, known as the "city track." A regular passenger train was due at Hampton, from the south, at 12:05, and on the day in question, arrived ten minutes late. A south-bound train was due, to leave immediately after the arrival of the passenger from the south, and at the time of the accident, was standing on the passing track, awaiting the arrival of the north-bound train. Plaintiff had lived in the town a great many years, and was thoroughly familiar with the tracks and with the time-table of defendant's trains. He knew, when he attempted to cross the tracks, from the fact that the south-bound train was standing on the passing track, that the passenger train had not arrived. Plaintiff, in attempting to cross the main line track, was struck by the north-bound passenger train, and for the injuries received in this collision, brings this suit.

The alleged grounds of negligence are that defendant failed to give any warning of the approach of the train, in that it failed to ring the bell, or sound the whistle of the engine as it approached the crossing; that it caused the train to run at a high and unlawful rate of speed within the town limits; and that it caused obstructions to be placed upon its grounds and side-tracks, so as to prevent the plaintiff from seeing the approaching train, and caused another train to approach the crossing in an opposite direction from that of the passenger train. There was evidence to support some, if not all, of these charges of negligence,

and the court did not direct the verdict because of
any failure of proof of negligence on the part of the
appellee, but because the evidence established negli-
gence on the part of appellant contributing to his
injury, and it is with this question we have to deal.
Appellant claims he was free from negligence, because
the yards and tracks were so obstructed that he could not
see the approaching train, that the wind was blowing
so hard as to distract his attention, and that the mov-
ing of the freight train on the passing track diverted
his mind and senses towards it. The evidence shows
that there were some obstructions which prevented
plaintiff from looking any great distance to the south,
except at certain intervals. It also shows, how-
ever, that at one place, three or four rods west of
the tracks, he had an unobstructed view of the track
to the south, and that, after crossing the first, or
stock yard track, there was a space of eight feet from
any point of which plaintiff might have seen an
approaching train for at least twenty-five rods.
The plaintiff testified that he looked south for an
approaching train before he reached the side-track, but
said he did not know whether he looked at the inter-
val where he could have seen the train, or not. Other
witnesses, who were not far from plaintiff, saw the
approach of the train and avoided it. Plaintiff also
testified that he did not look south after crossing the
side-track, and that, if he had looked south after pass-
ing this track, he could have seen the approaching
train. It is to be remembered that the plaintiff was
on foot, and could in the smallest fraction of time have
put himself out of danger, had he been on the alert.
For at least six feet after crossing the westernmost
side-track he was in a place of safety, and could from
any place in this intervening space have seen the
approach of the train, had he looked. He may not
have been able to hear it, on account of the wind

which was blowing, but he could see in that direction better than he could to the north, for the wind was blowing towards the south. It may be there would be some excuse for plaintiff had he looked for the ·approach of the train at the interval three or four rods west of the tracks, where his view was unobstructed, but he does not say that he did so. He says he looked south, and did not see any train, but does not know where he was when he cast his eyes in that direction. There is no room, then, for the argument, made by his counsel, that he had the right to rely upon the defandant's not running its trains faster than the ordinance of the town permitted. It must also be noted that plaintiff knew a train was due from the south about this time, and he had every reason to believe that it had not arrived, for the train from the north was still on the passing track. He was not justified in giving his undivided attention to the south-bound train, as he claims he did. *Pence v. Railway Co.*, 63 Iowa, 746 (19 N. W. Rep. 785); *Kennedy v. Railway Co.*, 68 Iowa, 559 (27 N. W. Rep. 743); *Nixon v. Railway Co.*, 84 Iowa, 331 (51 N. W. Rep. 157). We have iterated and reiterated the doctrine that a railway track is always a place of danger, and that it is the duty of one about to cross it, even in the absence of any special warnings or signals on the part of those in charge of the train, to use his senses in order to avoid injury. If plaintiff had stopped and looked for the train, even after he had crossed the side-track, this sad accident would not have happened. Whether he would have collided with the train had he looked three or four rods west of the right of way, will never be known, for plaintiff did not attempt the experiment. He knew, however, that his view of the track was obstructed for some distance just before reaching the side-track. This fact, alone, should have made him the more cautious, after he

arrived at a place where he had an unobstructed view of the track. The principles we have announced are so well established as to need no support of adjudicated cases, but see *Banning v. Railroad Co.*, 89 Iowa, 74 (56 N. W. Rep. 278); *Reeves v. Railroad Co.*, 92 Iowa, 32 (60 N. W. Rep. 244); *Haines v. Railroad Co.*, 41 Iowa, 227; *Benton v. Railroad Co.*, 42 Iowa, 192; *Tierney v. Railroad Co.*, 84 Iowa, 641 (51 N. W. Rep. 175), and authorities therein cited.

· The district court correctly sustained the defendant's motion, and its judgment is AFFIRMED.