H. H. REYNOLDS, Appellant, v. INTER-URBAN RAILWAY COMPANY, Appellee.

NEGLIGENCE: Contributory Negligence—Approaching Railway Crossing. The operator of an automobile who approaches a railway crossing with which he is perfectly familiar at a speed of some 8 miles an hour, and who, for a distance of 75 feet from the crossing, has a practically continuous view of the track for 300 feet, and drives upon the crossing and is injured by a passing train, is guilty of contributory negligence. For an added reason, he is guilty of such negligence when it appears that he was given timely warning of the approach of a car, both by an occupant of the car and by a flagman stationed at the crossing.

*Appeal from Des Moines Municipal Court.*—J. E. MERSHON, Judge.

MAY 10, 1921.

ACTION for personal injury suffered by the plaintiff in a collision between an automobile driven by the plaintiff and an interurban car operated by the defendant. The trial court directed a verdict for the defendant, and plaintiff appeals.—*Affirmed.*

*Bump & Stephens,* for appellant.

*W. H. McHenry, A. B. Howland,* and *Corwin R. Bennett,*
for appellee.

FAVILLE, J.—Beaver Avenue is a public highway, running
north and south, extending from the north limits of the city
of Des Moines. The appellee operates an interurban railway,
and maintains a track that runs nearly east and west at a point
where it crosses Beaver Avenue. Immediately south of the right
of way of the railway track is a highway known as the "Valley
Road," which also runs east and west, parallel to the railway
track. This road stops at Beaver Avenue, and ends immedi-
ately south of the point where Beaver Avenue crosses the
railway. As Beaver Avenue approaches the railway track from
the south, it passes down a steep hill, until it intersects the
Valley Road, from which point it is nearly level. A portion of
the way down the hill, the road is crooked, and passes through
deep cuts as it approaches the intersection with the railway
track. These cuts are such as to obscure the view of a person
driving north on Beaver Avenue toward the railway track, un-
til he reaches the point on the south side of Valley Road where
it joins Beaver Avenue. It is approximately 75 feet from
this point to the railway track. From this place, the view to
the east is open and unobstructed for a distance of approxi-
mately 300 feet. As one approaches nearer the railway track,
the view is unobscured for a distance of nearly half a mile. At
the time of the accident in question, there was a billboard near
the railway track, on the south side of the right of way and
the east side of Beaver Avenue, which was about 10 feet high
and about 20 feet long. This billboard was located very near to
the east line of Beaver Avenue; or, in other words, it was al-
most immediately east of the point where Beaver Avenue crosses
the railway track. It in no way obstructed the view to the east
until a person was within a few feet of the railway.

Across the track to the north and on the east side of Beaver
Avenue was a small house, used by a flagman who was stationed
by the appellee company at this crossing. Near this house on
the north side of the right of way and on the east side of Beaver

Avenue was an automatic signal on a post, with a bell which was rung at the approach of a car, and with automatic arms that moved up and down on the approach of a car on the railway track, and with the word "Danger" thereon. To the east, down the right of way of the appellee, there is a clump of bushes or trees along the north line of the Valley Road, about 300 feet from Beaver Avenue. The evidence is not very clear as to whether these bushes and trees wholly obscured the view of a car on the track farther east of this point. On the west side of Beaver Avenue and north of the railway track was the usual crossing sign displayed at railway crossings, with two arms in the form of a cross, fastened on a post, and bearing the words "Railroad Crossing."

At the time of the injury in question, the appellant was driving a Ford car, in which were three passengers besides himself, and was going north on Beaver Avenue from the city of Des Moines to Camp Dodge, where he was employed. The accident occurred between the hours of 6 and 7 o'clock in the forenoon of the 31st day of August, 1917. The road at the time was dry. Appellant testified that he was going somewhere from 6 to 8 miles an hour, as he approached the railway track. A witness who was in the car with the appellant estimates the speed at from 10 to 20 miles an hour. The appellant testified that, as he approached the intersection, he was looking in different directions, and did not see anything coming; that he did not see any signs of any train or hear anything; and that, when within about 20 or 30 feet of the track, he "concluded the coast was clear." He says that, when he was about 20 feet from the track, the flagman jumped out, with his hat in one hand, and jumped up and down in front of the car; that he turned the car to miss him, and that there was a soft place in the road, which caused the car to skid; that he put on what force he could, to get across the track; and that, as he went over the track, the interurban car struck the rear end of his automobile, about 6 or 8 inches from the back, and he was thrown out and injured. He testified that, when he first saw the flagman, the latter was right in front of his car, and probably 10 feet south of the track. He says that he knew what the flagman was there for, and that he wanted him to stop, and he said:

"I couldn't stop, because I didn't want to strike him. If I had put on my brakes and shut off the gas, I could have stopped before I got on the tracks."

He said:

"I could have stopped it, if it hadn't been for the flagman in front of me."

Appellant also testified that he could have stopped his car in from 8 to 10 feet, at the speed at which he was going. The appellant further testified that he should judge he was 40 or 50 feet from the interurban track when he looked to the east to see if a car was coming. The appellant was familiar with the entire situation, and had driven over that road morning and evening for about two months before the accident.

A witness for the appellant, who was riding with him at the time of the accident, testified that, as the appellant's car approached the railway track, the flagman came out and held up his sign and tried to stop them; that the appellant swerved his car to the side, and passed by the flagman onto the track. He says that the automobile was something like 30 to 50 feet from the track when the flagman appeared on the scene. He says he saw the flagman coming south toward the automobile with a stop signal in his hand, holding it up.

Another witness for the appellant, who was in the car, testified that, as they approached the railway track, and, he thinks, after they had crossed the Valley Road, he saw the approaching car and spoke to the appellant, and said, "There is a car coming." He says the flagman was probably 10 or 12 feet to the south of the railway track, and stood right in the way; that the appellant turned his automobile a little, and went upon the track; that, when he looked for the car, the automobile was possibly 20 feet from the flagman. He says he saw the car when it was about 300 feet from the intersection of Beaver Avenue down the track, and that, the moment he saw it, he said to the appellant, "There is a car;" and that at that time the automobile was something like 50 feet from the track. This witness was on the front seat, with appellant, who was driving the car.

We have not attempted to set out in complete detail all of the evidence, but enough to indicate its general character. We have, then, a situation where the driver of an automobile is

approaching a known railway crossing, driving at a slow rate of speed on a dry highway. As he approaches this crossing, from a point approximately 75 feet from the railway track he had an unobstructed view down the track, in the direction from which a car was approaching, for a distance of about 300 feet. As he approached the track, a flagman came into the highway in front of his car, on the side of the railway track which he was approaching, in plain view, and signaled him to stop. In addition to this, at a distance of at least 50 feet from the track, a passenger sitting beside him observed the approaching car, and spoke to him of its approach. His own testimony shows that, if he had been watching for the car, and if he had used the appliances at his command, he could have avoided going upon the track. His explanation is that he was so close to the flagman, who was near the center of the road, that he endeavored to dodge him, and passed beyond him onto the track. It is evident, under all the testimony, that, if the appellant had sought to stop his car at the time that he saw the flagman, he could have turned his car to one side, and avoided hitting the flagman, and would have had ample time to stop his car, without going on the track at all. He chose the alternative, of attempting to pass the flagman and to cross the track in front of the approaching car; and in endeavoring to do so, was injured.

The evidence shows that, for a distance of approximately 75 feet south of the track, the view to the east along the railway track was unobstructed for 300 feet, except for the presence of the signboard, 20 feet long, located almost immediately at the point of intersection. Had the driver of the automobile looked to the east, while traversing this distance of 75 feet, he could not have failed to observe the approaching car. The passenger sitting beside him while this portion of the road was being traveled did look to the east and did see the approaching car and did call to the appellant, telling him of its approach. There can be no escape from the conclusion that, had the appellant looked to the east while traveling this distance, and had seen the approaching car, he could have stopped his automobile within a distance of 8 or 10 feet, and thus have averted the injury. The court held that appellant was guilty of contributory negligence, as a matter of law.

We have passed upon the question of the duty of the driver of an automobile, in approaching a known railway crossing, to use his senses and to look for an approaching car, so many times that it seems unnecessary to cite the numerous authorities on the proposition. To approach such a crossing without looking for an approaching car, when one could be readily observed if a driver would look, can be nothing else than contributory negligence on the part of the driver of the automobile, barring him from recovery.

It is the appellant's contention, however, in this case that he is relieved from the ordinary rule of contributory negligence in failing to observe the approaching car and in failing to stop his automobile, because of the failure of the flagman to give a proper and sufficient warning to the appellant of the approaching car, and because he sought to avoid a collision with the flagman, and thereby went upon the track in front of the approaching street car. The appellant testified:

"I judge the flagman, when I first saw him, was right in front of my car. I was probably 10 feet from him. At that time, I was about 20 feet from the track."

He also testified:

"I knew what the flagman was there for, and that he wanted me to stop. I couldn't stop because I didn't want to strike him. If I had put on my brakes and shut off the gas, I could have stopped before I got on the tracks."

There can be no escape from the conclusion that the presence of the flagman, in the position where he was, was understood by the appellant as being a warning of the approach of a car on the railway track. His claim is that the flagman approached suddenly and that he swerved his car to one side to avoid collision with the flagman, and that the car skidded during this movement, and he then passed onto the track in endeavoring to get across.

The difficulty with the appellant's contention at this point is that the evidence clearly shows that, if he had used his powers of observation and had looked, even before he saw the flagman at all, he would have observed the car approaching from the east in ample time to have stopped his car before going upon the track. It is also very evident that, under his own testimony,

when the flagman appeared in the road in front of him, there was ample time and opportunity for him to have stopped the car without going upon the railway track.

The appellant argues that, inasmuch as the railway company maintained a flagman at this crossing, whose duty it was to warn travelers of the danger of approaching cars, he had a right to presume that the flagman would be at his post and give a warning if any car was approaching, and that he could place reliance thereon and proceed with an assurance of safety, unless the flagman did so appear and did give a warning signal. It is appellant's contention that he was not guilty of negligence in proceeding, relying upon the failure of the flagman to appear and give a warning.

The difficulty with the position of the appellant in this regard is twofold: First, the undisputed evidence is to the effect that the flagman did appear and did give a warning at a time when, under the appellant's own testimony, he was at a sufficient distance from the track so that he could have stopped his car in time to avoid the injury. Even if we accept his explanation, that it was necessary to divert his car to avoid a collision with the flagman, there is still no escape from the conclusion, under his own testimony, that the distance at which he was from the railway track at the time that he discovered the flagman was sufficient so that he could have stopped the car, even if he had passed the flagman, without going upon the track of the railway company.

There is another very apparent reason why the absence of the flagman at the time the appellant approached the railway crossing would furnish no excuse to the appellant for attempting to cross without looking to see whether a car was approaching on the railway track. This is not a case where a flagman signals to a party to cross a railroad track, and in so doing, an injury results. The entire absence of the flagman, even if one was customarily present, would not relieve the appellant of the duty to look and listen as he approached this railway crossing, under the situation and circumstances disclosed by the evidence.

We had a similar proposition before us in the case of *Sala v. Chicago, R. I. & P. R. Co.*, 85 Iowa 678, where the injury

occurred upon a crossing in the city of Muscatine. In said case, we said:

"For several years immediately preceding the accident, the defendant had kept a flagman at the crossing, to warn passengers of danger, and the plaintiff had never been there before when a train was passing without seeing him. There was no flagman at the time of the accident, and the plaintiff states that she 'noticed no flagman, and went on;' but it is clear that she did not rely upon his presence as an assurance of safety, for she not only does not claim that she thought no train was approaching because he was not there, but, on the contrary, she says she looked both ways for a train, and more than once; also, that 'it is not a fact that I did not look nor listen nor think of the train. That is something I never do without looking for the train.' She would not have been justified, however, in relying wholly upon the absence of the watchman as an assurance of safety. Usually, the street cars were not run so early in the morning, and the watchman did not go on duty until 6 o'clock. A railway crossing is apt to be a place of danger, and the persons using it should not omit the precaution of looking for an approaching train before going onto the track, when they may do so without inconvenience, even though a watchman should be present to give notice if a train is approaching. The absence of the watchman should not be regarded as an invitation to cross without looking for danger. Such a case is distinguishable from one where the watchman is present, and, by a signal to cross, or by a failure to give any signal when he sees a crossing attempted, gives assurance, either express or implied, that it can be made without danger. But in *Cadwallader v. Louisville, N. A. & C. R. Co.*, (Ind.) 27 N. E. 161, the Supreme Court of Indiana held that a person who attempted to cross a railway track without looking for a train, for the reason that the watchman gave no signal, receiving injuries in the attempt, was guilty of such contributory negligence as to prevent a recovery. We conclude that the undisputed facts of the case show that the plaintiff contributed to the accident by her own negligence."

Under the particular facts in this case, the absence of the flagman was not an invitation to the appellant to cross without looking for danger. The appellant approached this crossing,

as he testified, with his car at a slow rate of speed. The duty rested upon him to look and listen for an approaching car. Had he done so, he must have seen the car coming from the east, as did the witness who was seated beside him, in ample time to have avoided the collision by stopping his automobile before it went upon the track. His failure to look and his failure to stop his car under the circumstances were such negligence on his part as justified the court in directing the jury to return a verdict for the appellee.

In *Crawford v. Chicago G. W. R. Co.*, 109 Iowa 433, we said:

"A person possessing the ordinary powers of seeing and hearing cannot, without negligence on his part, knowingly approach a railway crossing and fail to discover an approaching train which he can readily see or hear a sufficient length of time to enable him, with reasonable effort, to avoid danger."

In *Landis v. Inter-Urban R. Co.*, 166 Iowa 20, we said:

"It is well settled that, if one drives upon a railway crossing, which is a known place of danger, in front of an approaching train, the view of which is substantially unobstructed, without looking and listening, or if he looks and listens, and does not see a car which he should have seen, had he exercised reasonable care to see or to hear, but says that he neither saw nor heard, he is guilty of contributory negligence, as a matter of law."

As sustaining these pronouncements, see *Beemer v. Chicago, R. I. & P. R. Co.*, 181 Iowa 642; *Artz v. Chicago, R. I. & P. R. Co.*, 34 Iowa 153; *Pence v. Chicago, R. I. & P. R. Co.*, 63 Iowa 746; *Moore v. Keokuk & W. R. Co.*, 89 Iowa 223; *Crawford v. Chicago G. W. R. Co.*, 109 Iowa 433; *Hinken v. Iowa Cent. R. Co.*, 97 Iowa 603; *Swanger v. Chicago, M. & St. P. R. Co.*, 132 Iowa 32; *Williams v. Chicago, M. & St. P. R. Co.*, 139 Iowa 552; *Wilson v. Illinois Cent. R. Co.*, 150 Iowa 33; *Powers v. Iowa Cent. R. Co.*, 157 Iowa 347; *Ring v. Chicago, St. P. & K. C. R. Co.*, (Iowa) 75 N. W. 492 (not officially reported); *Bloomfield v. Burlington & W. R. Co.*, 74 Iowa 607; *Sala v. Chicago, R. I. & P. R. Co.*, supra.

The appellant places great reliance, in argument, upon the case of *Lockridge v. Minneapolis & St. L. R. Co.*, 161 Iowa 74.

That case was one where an injury was received from the collision between an automobile and a railway train at an intersection in the city of Des Moines. The record shows that there were obstructions to the view of a driver approaching the railway crossing. The plaintiff testified that there was no flagman at the crossing, and that, as he approached the tracks, he looked in each direction and saw no flagman, and supposed the track was clear. It appeared that the plaintiff had frequently passed over this crossing, and that at other times a flagman was there, whose duty it was to give signals. The jury might have found from the record that the flagman was there, but did not appear to give a warning to the plaintiff until it was too late to avoid the collision; that he ran from whatever point he occupied, as plaintiff approached, in front of the plaintiff's car, and tried to stop him.

The case is distinguishable from the case at bar. There is no inconsistency between the rule announced in the *Lockridge* case and the one announced in the *Sala* case, supra. We do not intend to depart from the rule that, in populous cities, where the view is obstructed and the ordinances of the cities require the maintenance of gates and the presence of flagmen, and such are maintained, in cases when the gates are open and the flagman is absent, there is at least an implied invitation to cross and an implied assurance of safety. In closely built-in cities, the view of railway crossings is frequently almost completely obstructed, and the city ordinances frequently require the presence of gates or flagmen. This is necessary where the traffic is heavy, and where, because of obstructions, reliance must be placed almost entirely upon the presence of the gates or flagmen. But this rule of an implied assurance of safety because of the lifting of gates or the absence of watchmen cannot be held to be universally applicable to a crossing in the country, or to a crossing where the view is practically unobstructed, and where, by looking and listening, a driver can observe an approaching train.

Under the facts of this case, we hold that the absence of the watchman, as appellant approached the track, was not such an assurance of safety to the appellant as relieved him from the duty of looking and listening, as he approached the railway

crossing; and that the appellant was guilty of such contributory negligence as precludes him from the right of recovery in this action.

It therefore follows that the action of the lower court in directing a verdict in favor of the appellee was correct, and the judgment must be, and it is,—*Affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.