REED v. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

1. **Railroads** : NEGLIGENCE : CROSSING HIGHWAY WITHOUT RINGING BELL. Under chapter 104, Laws of 1884, to run a locomotive across a public highway without ringing the bell is negligence, for which the railroad company is liable.

2. —— : —— : —— : QUESTION FOR JURY. Plaintiff was struck by a locomotive and injured, while driving across a railway track on a public highway. Upon the question whether the bell of the locomotive was rung or not, plaintiff testified positively that it was not ; that he looked and listened while approaching the track, and that the habits of his horses were such that they would not have gone upon the track had the bell been rung. Other witnesses who were in the vicinity, and some of whom heard the crash of the collision, and one of whom had his attention directed to plaintiff's danger, testified that they did not hear it. But the engineer and fireman, and another employe of defendant who was on the train, testified positively that it was rung. *Held* that there was such a conflict of the evidence as to preclude this court from interfering with the finding of the jury that the bell was not rung.

3. —— : NEGLIGENCE : OBSTRUCTING STREET WITH CARS : INJURY TO TRAVELER ON CROSSING. Plaintiff was struck by a locomotive and injured, while driving across defendant's track on the street of a city. On a side-track, which crossed the street, a line of box-cars was stored, and had been for some days, so that they obstructed the street, except an opening of about thirty-five feet, which was left for public travel. *Held* that to so obstruct the street was negligence ; that if the whole width of the street was not required on which to drive vehicles, it was necessary that it should be left open, so that travelers approaching the crossing would have an unobstructed view of, at least, the full width of the street.

4. —— : INJURY TO TRAVELER ON CROSSING : CONTRIBUTORY NEGLIGENCE : EVIDENCE. The evidence in this case considered (see opinion), and *held* that it cannot be concluded therefrom, as matter of law, that plaintiff was guilty of contributory negligence in driving upon defendant's track as he did.

5. ——— : ——— : DUTY OF TRAVELER TO STOP VEHICLE. It is not necessarily the duty of a traveler about to cross a railway track upon a highway to stop his team. He is only required to exercise such care and caution as a reasonable person of ordinary prudence and skill would exercise under the same or similar circumstances.

6. ——— : ——— : AMOUNT OF DAMAGES. The plaintiff in this case was a farmer sixty-five years old, and he was so injured through defendant's negligence that several of his ribs were broken in such a manner that they punctured his lung. Six months afterward he could not raise his left arm above his head, and the injuries seem to be permanent in their nature. *Held* that a verdict of eighty-two hundred and fifty dollars could not be interfered with on appeal as being excessive.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

FILED, MARCH 10, 1888.

THIS is an action to recover damages for a personal injury which the plaintiff sustained by a collision between a train of cars of appellant and a wagon of the plaintiff at the crossing of Dace and Howard streets, in Sioux City. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*J. H. & C. M. Swan,* for appellants.

*Hubbard, Taylor & Spaulding,* for appellee.

ROTHROCK, J.—I. The plaintiff resides some ten miles from Sioux City. On the fifth day of September, 1884, he went from his home to said city alone in a lumber wagon, and, after transacting his business, he started for his home, leaving the city by way of Dace street. The defendant's railroad track and a side-track are laid upon Howard street, which crosses Dace street at right angles. In attempting to cross Howard street, the wagon of plaintiff, in which he was seated, was struck by a switch-engine, and the plaintiff was thrown from the wagon and very seriously injured. He grounds his action to recover upon three alleged acts of negligence upon the part of the defendant: (1) Because the train-men operating the engine failed to give proper signals

in approaching the crossing; (2) in so obstructing its track as to shut off the sound and sight of an approaching engine ; and (3) in failing to place a flagman at the crossing. The defendant denied the averments of negligence, and alleged that the plaintiff was justly chargeable with negligence which contributed to cause the injury of which he complains.

The first question which we think should be determined is that of the alleged failure to give any signal of the approach of the engine. It appears that there is a city ordinance which prohibits the blowing of locomotive whistles within the city. But the plaintiff claims that the engine approached the crossing and collided with his wagon without the ringing of the bell upon the engine. If this be true, there can be no question but that it was negligence for which the defendant would be liable, unless exonerated from liability by reason of some negligence of the plaintiff. By chapter 104 of the Laws of 1884, it is required that the bell on a locomotive engine shall be rung at the approach of a highway crossing, and it shall be kept ringing continuously until the crossing is passed, and that the company shall be liable for all damages which may be sustained by any person by reason of a neglect to do so. It is a disputed question in the case whether the bell was rung at the approach to the crossing. The plaintiff testified positively that it was not ; that the engine approached silently and that if the bell had been rung he could have heard it. Several other witnesses who were in the immediate vicinity testified that they did not hear the bell. Now, it is true this is negative testimony, for the bell might have sounded and the persons in the vicinity have failed to hear it, or, by reason of being accustomed to the passing of trains, have failed to notice it ; but some of these witnesses heard the crash of the collision, and one, at least, had his attention directed to the plaintiff's danger, and did not hear the bell. We think this evidence is not to be discarded in considering this question. Another circumstance related by plaintiff is

1. RAILROADS: negligence: crossing highway without ringing bell.

2. ——:——: question for jury.

Reed v. The Chicago, St. P., M. & O. Ry. Co.

entitled to consideration. He stated that his team would not have gone on the crossing if the bell had been ringing. He knew the instincts and habits of his horses, whether liable to fright at the ringing of a bell upon an engine. Opposed to this evidence, the engineer and fireman, and another employe of defendant who was on top of one of the cars attached to the engine, testified positively that the bell was rung as the crossing was approached. In this state of the evidence, it was a fair question for the jury to determine. It is not the province of this court to say that the bell was rung.

II. We come now to the question of the alleged negligence of defendant in blocking up and obstructing the view of its track at the crossing. As has been said, there are two railroad tracks on Howard street. The main track is a line connecting the yards of the defendant with its transfer boat across the Missouri river. The tracks at the crossing of Dace street are twelve feet apart from center to center. As the plaintiff approached the crossing, the first track was the side-track. A line of box-cars was stored on this track along Howard street for a considerable distance. There was an opening in this line of cars to permit travel to pass along Dace street. The ground at the crossing is practically level; the railroad tracks being laid upon the surface. This opening in the line of cars was not to exceed thirty-five feet wide. There was an absolute and impassable obstruction of more than half the width of Dace street, so that foot travel was compelled to go off the sidewalk and around the end of a car on one side of the street. The line of cars had been left in this position for several days, and during this time the defendant was using its main track from the yards to the transfer. It is claimed that there was no showing that the opening was not sufficiently wide to properly accommodate the travel on Dace street, and that for aught that appears the defendant had the right to store its cars on Howard street. We think the bare statement of the manner in which Dace street was obstructed is a

*3. ——: negligence: obstructing street with cars: injury to traveler on crossing.*

sufficient answer to this position. Whatever the abstract right may be,—that is, whether the defendant was liable to prosecution for obstructing Dace street,—it was nevertheless a plain violation of its duty to the public to so use the street. If the whole width of the street was not required upon which to drive vehicles, it was necessary that it should be left open so that travelers approaching the crossing would have an unobstructed view of at least the full width of the street.

The plaintiff, in his testimony as a witness upon the trial, gave the following statement of the facts

4. ——: injury to traveler on crossing : contributory negligence : evidence.

leading up to and immediately attending the collision : "As I approached the railroad tracks I saw there was box-cars on the side-track and pretty close together. I should judge they were not over twenty or twenty-five feet apart. I did not notice in particular on which side of Dace street the cars projected most. I know it was a narrow place to go through. I thought of that before I got to it,—yes, I thought of that before I got to it. When I got near the crossing, within probably one hundred and fifty or two hundred feet, I held my team up and listened as intently as I could, and raised myself up and looked, and was driving very slow and continued in that way until I got onto the track. My horses got onto the track, and then was the time I could not drive slow. My horses sheered to the right. That is the last I recollect anything about it, only I got far enough along to see this engine right here almost onto me. I first saw the engine just as the horses made the jump sideways ; it was almost onto me. I first saw it as I came out from behind the car that was to the north on the side-track. I did not hear any sound or signal. I looked from the time I got within one hundred and fifty or two hundred feet of it. I did not take my eyes off ; looked first one way and then the other, and I saw or heard nothing." He made these further statements in his cross-examination : "I say that if the bell had been ringing on that engine with the wind blowing from the direction it was, and with the obstructions that were

between me and the engine, I should have heard it. I should certainly have heard it at the time I drove across the tracks. The engine was right onto me. The bell did not ring, and I can't drive my team across the track where the bell is rung. I say it was not rung at the time I drove upon the track. I first saw the engine as I came round the end of the cars. It was right onto me at that time." We have made these extracts from the plaintiff's testimony for the reason that, so far as they relate to his manner of driving his team, and his efforts to discover the approach of a train, they are not directly contradicted by any witness. One of the witnesses, who saw him as he approached the crossing, stated that he was driving leisurely along. The main defense was that the plaintiff could have seen the smoke-stack of the engine by looking over the cars, and that he could have seen the train approaching by looking under the cars. Photographic views were taken after the accident from a point in Dace street, over which plaintiff passed, which it is claimed demonstrates this to be true. If it be true, the testimony of the plaintiff, that he looked and listened as he approached, must be entirely disbelieved, for surely no sane man would have driven between the opening in the street, knowing that he was to come in collision with a train. It was not an attempt on his part to recklessly cross the track in front of a moving train, as is sometimes the case. After an examination of these views, and a full and careful consideration of all the evidence, and the arguments of counsel based upon the relative movements of the train and the wagon, and the number of feet the train, going at six miles an hour, as was shown, would move while the wagon was passing over a given distance, we conclude that it cannot be said as matter of law that the plaintiff was chargeable with negligence in not seeing the approaching train. We do not hold that he could have seen it. The train was moving at a much greater rate of speed than the wagon, and as he came nearer to the crossing he would be

unable to see the smoke-stack, and looking under the cars at an angle his view would be very much obstructed by the wheels.

The defendant prepared and submitted to the court a number of instructions, with the request that they be given to the jury. Several of these instructions recited facts disclosed in evidence, and laid down the rule that it was the duty of the plaintiff to stop his wagon and look and listen for an approaching train before going upon the crossing. These instructions were refused. But the court embodied much that was requested by the defendant in the charge given to the jury. It refused to direct the jury as matter of law that it was the duty of the plaintiff to stop his wagon before going upon the track. If it had done so, this would have been an end of the case, for the plaintiff did not claim that he brought his team to a full stop. It would have been equivalent to instructing the jury to find for the defendant. We do not believe that the court would have been warranted in so instructing. It would have been a plain invasion of the province of the jury. There were no such conceded or undisputed facts in the case as required the court to hold as matter of law, or to direct the jury, that the plaintiff should have stopped his team. It is probably true that if he had stopped his team he would not have been injured. But that is not the question the jury were required to determine. The question submitted to them was, did the plaintiff, as he approached the crossing, use ordinary care and diligence to ascertain whether a train was approaching? The court instructed the jury upon this feature of the case as follows:

"While it was the plaintiff's duty, in approaching and being about to cross the tracks, to exercise ordinary care and caution, and to know of the approach of engines or trains, he is not, as a matter of law, bound to stop his team and listen or look for an approaching train or engine before attempting to pass in every case. If he could hear or see as well without stopping, he would not be required to stop to listen or to look. He

*5. ——: ——; duty to traveler to stop vehicle.*

is merely bound to do that which is dictated by common prudence, in view of the perils to which he may be exposed. If the obstructions to sight or difficulty of hearing were such that an ordinarily prudent man would not attempt to cross without stopping to see or to listen before crossing, then the failure so to do would be negligence; and if the jury find from the evidence that plaintiff did drive upon the tracks without exercising the care and caution which the facts and circumstances in evidence show it was his duty to exercise, and his failure to exercise such care directly contributed to produce the injury, then he cannot recover. If the jury find, from the evidence, that the cars were standing upon the track in such a manner as to obstruct or partially obstruct the view of the track upon which the collision occurred, and to make it more difficult to hear or see an approaching train, and the plaintiff, knowing these facts, drove upon the track without looking or listening or taking any precaution to ascertain whether the train was coming or not, and a collision occurred by reason thereof, he cannot recover in this action."

We think these instructions, and others given by the court, were correct. All through the charge, the jury are referred to the facts and circumstances disclosed in the evidence, and are directed to determine therefrom whether the plaintiff exercised such care and caution as a reasonable person of ordinary prudence and skill would exercise under the same or similar circumstances. The thought was kept prominently before the jury that it was absolutely necessary that the plaintiff should use his faculties of sight and hearing, and that if he failed in this respect he could not recover. We know of no authority which goes further than this, and we think the court correctly left it to the jury to determine whether the plaintiff should have stopped his wagon.

III. The jury found for the plaintiff in the sum of eighty-two hundred and fifty dollars. It is claimed

6. ——: ——:  that the verdict is excessive, and the result
amount of     of passion and prejudice.   The plaintiff at
damages.      the time of the injury was sixty-five years
of age.   He was a farmer by occupation, and, as we
infer, he is the owner of the farm on which he resides.
By the collision he was thrown headlong from the
wagon, and two or three of his ribs were broken towards
the back near the shoulder-blade.   The broken ribs
punctured his lung, so that air escaped therefrom and
inflated the surrounding tissues.   He was confined to
bed in a hotel in Sioux City for three weeks, when he
was removed to his home, where he was confined indoors
for about a month.   He suffered great pain, and at the
time of the trial in the court below, some two years
after the injury, he still continued to be a sufferer from
his injuries.   For six months after the injury he could
not raise his left arm above his head.   The injuries
appear to be permanent in their nature.   We are not
prepared to say that it is our duty to interfere with the
verdict as being excessive.

