ONA SALA, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee.

1. **Negligence:** PERSONAL INJURY: CONTRIBUTORY NEGLIGENCE: ABSENCE OF FLAGMAN AT RAILWAY CROSSING: EVIDENCE. While attempting to pass over the defendant's railroad crossing in the town of M. the plaintiff was struck by an engine attached to a freight train and injured. The plaintiff claimed to have looked up and down the track before crossing, but the evidence showed that when within thirty-five feet of the crossing the view of the track, in the direction from which came the train in question, was open for a distance of about twelve hundred feet, and that when the plaintiff was at that point the engine which struck the plaintiff could not have been more than three hundred feet away. The train approached the crossing at a speed of from twenty to twenty-five miles an hour, and no bell was rung. The defendant had for several years kept a flagman at the crossing in question to give warning of danger from approaching trains, but he did not go on duty until six o'clock in the morning, and the accident in question occurred before that hour. The plaintiff claimed that she had never before been at the crossing when a train was passing without seeing the flagman, and that not seeing him at this time she passed on. It appeared, however, from the plaintiff's testimony, that she did not rely upon the absence of the flagman as an assurance of safety, but upon her own sight. *Held*, in an action against the railroad company for damages, that the plaintiff was guilty of contributory negligence, and that the court properly instructed the jury to return a verdict for the defendant.

2. ———: ———: ———: OMISSION OF RAILROAD TO SOUND WHISTLE AND RING BELL AT CROSSING: CONSTRUCTION OF STATUTE. Under chapter 104 of Acts of the Twentieth General Assembly, requiring a steam whistle to be twice sharply sounded by a locomotive engine at least sixty rods before a highway crossing is reached, and that after the sounding of the whistle the bell shall be rung continuously until the crossing is passed, and providing that the railroad company shall be liable for all damages which shall be sustained by any person by reason of such neglect, the omission of such duty will not render a railroad company liable in damages for personal injuries sustained at a railroad crossing, without regard to the negligence of the person injured.

*Appeal from Muscatine District Court.*—HON. C. M. WATERMAN, Judge.

FRIDAY, MAY 27, 1892.

ACTION to recover damages for personal injuries sustained by the plaintiff. After she had submitted her evidence, the jury, by order of the court, returned a verdict in favor of the defendant, and judgment was rendered thereon for costs. The plaintiff appeals. *Affirmed.*

*Jayne & Hoffman,* for appellant.

*J. Carskaddan* and *Thos. F. Wright,* for appellee.

ROBINSON, C. J.—On the fifteenth day of August, 1889, the defendant was operating a railway in the city of Muscatine. Its track, extending from the northeast in a southwesterly direction, crossed Second street, which extends from north to south, on a grade about four feet higher than the general level of the street in that vicinity. Twenty-four feet north of the main track the street was also crossed by a side track on a level four feet lower than that of the main track. On the west side of the street was a sidewalk; near that was a street railway track, and east of that was the portion of the street used by wagons. South of the main track of the defendant were a number of lumber piles, of which the nearest was fifty feet from the track, a telephone pole, and some trees. North of the side track were lumber piles, warehouses, and factories, and near the crossing was a flagman's station and building. The view of the railway east of the crossing was somewhat obstructed by the objects named, but at a point on the sidewalk one hundred and five feet south of the main track a person could see it for a distance of six hundred and fifty feet, and from a point

fifty feet south it could be seen for a distance of one thousand and two hundred feet. At half past five o'clock in the morning of the day specified, the plaintiff left her home near the street railway to participate in a firemen's excursion to Moline. Before she reached the street railway a car passed, but she waited for a Miss Simmons, who was a short distance away, to join her, and made no effort at that time to stop the car. When she was joined by Miss Simmons a signal to stop the car, which was then distant about one block, was given. In response to the signal the car was stopped south of the main track, and the driver called to the plaintiff and her companion to hurry; but, seeing a freight train approaching from the east, he drove to the north side of the track, and there stopped. The plaintiff and Miss Simmons walked rapidly, and, as they attempted to cross the track of the defendant, were struck by the engine. Miss Simmons was killed, and the plaintiff received serious injuries, some of which are permanent. She asks to recover damages for those injuries.

I. The train in question approached the crossing at a speed of from twenty to twenty-five miles an hour, without the ringing of a bell. Ordinances

1. Negligence: personal injury: contributory negligence: absence of flagman at railway crossing: evidence.

of the city of Muscatine forbade the running of trains within the city limits at a higher rate of speed than six miles an hour, and required that when a locomotive passed through the city its bell should be constantly sounded. The defendant was also required to have a flagman at the crossing in question. The evidence submitted would have authorized the jury to find that the defendant was negligent in operating its train at too high a rate of speed, and in permitting it to approach the crossing without giving proper warning. But it is insisted by the defendant that the negligence of the plaintiff contributed to the accident,

and the district court, in charging the jury to return a verdict for the defendant, acted upon that theory. It is clear that had the plaintiff used reasonable diligence to ascertain if a train was approaching, or had exercised but slight care to ascertain the fact, the danger would have been avoided. It is true she testifies that, "just as we got past the lumber piles, I looked both up and down the track, and the last I knew I was down; I didn't know what struck me at the time;" and also, that she looked more than once; but the evidence shows conclusively that she could not have looked to the eastward with any degree of attention. Conceding the claim made in her behalf that the side track was usually full of cars, and may have been at the time in question, we think the plaintiff could not have mistaken a locomotive and freight cars attached, moving at the rate of twenty or more miles an hour, for stationary cars standing on a track four feet lower, and partially hidden from view by the embankment on which the main track was built. When the plaintiff was thirty-five feet from the crossing she could have seen the track in a northeasterly direction for a distance of one thousand, two hundred feet, and the locomotive which struck her could not have been more than three hundred feet away, and probably was not half so far as that, and on a level three or more feet higher than that on which the plaintiff was walking. Had she looked in the direction of the train she must have seen it, and would have known at once the danger she would incur in attempting to cross the track. It was so apparent to others in the street car and on the side track that it did not occur to them that it could be unknown to her, and no warning was given. It is indeed most strange that she and her companion could have walked a distance of more than one hundred feet, with nothing whatever to obstruct their view of the train, without either hearing or seeing it. In consequence of the

position of the car which they were seeking to overtake, and the direction in which the train of the defendant approached the crossing, their faces, and especially that of the plaintiff, would naturally have been turned somewhat towards the train, and when they were near the crossing they could not have looked towards the street car without seeing the train. Miss Simmons was on the side towards the train, but not so as to obstruct the plaintiff's view of it, they were talking with each other, laughing, and hurrying to overtake the car; and their attention was thus probably diverted from all thought of danger. The plaintiff was about twenty-one years years of age at the time. Her hearing and eyesight were good. She was apparently intelligent, and, from frequent use, was thoroughly acquainted with the crossing.

For several years immediately preceding the accident, the defendant had kept a flagman at the crossing to warn passengers of danger, and the plaintiff had never been there before when a train was passing without seeing him. There was no flagman at the time of the accident, and the plaintiff states that she "noticed no flagman, and went on;" but it is clear that she did not rely upon his absence as an assurance of safety, for she not only does not claim that she thought no train was approaching because he was not there, but, on the contrary, she says she looked both ways for a train, and more than once; also that "it is not a fact that I did not look, nor listen, nor think of the train. That is something I never do without looking for the train." She would not have been justified, however, in relying wholly upon the absence of the watchman as an assurance of safety. Usually the street cars were not run so early in the morning, and the watchman did not go on duty until six o'clock.

A railway crossing is apt to be a place of danger, and the persons using it should not omit the precaution

of looking for an approaching train before going onto
the track, when they may do so without inconvenience,
even though a watchman should be present to give
notice if a train is approaching.   The absence of the
watchman should not be regarded as an invitation to
cross without looking for danger.   Such a case is dis-
tinguishable from one where the watchman is present,
and by a signal to cross, or by a failure to give any
signal when he sees a crossing attempted, gives assur-
ance, either express or implied, that it can be made with-
out danger.   But in *Cadwallader v. Louisville, N. A. &
C. R'y Co.*, 27 N. E. Rep. 161, the supreme court of
Indiana held that a person who attempted to cross a
railway track without looking for a train, for the reason
that the watchman gave no signal, receiving injuries in
the attempt, was guilty of such contributory negligence
as to prevent a recovery.   We conclude that the undis-
puted facts of the case show that the plaintiff contribu-
ted to the accident by her own negligence.   Some of
the rulings of the district court in admitting and
excluding evidence are objected to, but, had they been
as the plaintiff insists they should have been, the result
could not have been other than it is.

II.   Section 1, chapter 104 of Acts of the Twen-
tieth General Assembly, provides "that a bell and a
steam whistle shall be placed on each loco-
motive engine operated on any railway in
this state, and said whistle shall be twice
sharply sounded at least sixty rods before
a highway crossing is reached, and after
the sounding of the whistle the bell shall be rung con-
tinuously until the crossing is passed,   *   *   *   and
the company shall also be liable for all damages which
shall be sustained by any person by reason of such
neglect."   It is contended by the plaintiff that the
defendant is liable, under the provisions of this section,
notwithstanding her contributory negligence, and *West*

2. —: —: —:
omission of
railroad to
sound whistle
and ring bell
at crossing:
construction
of statute.

*v. Chicago & N. W. Railway Co.*, 77 Iowa, 654, and other cases in which section 1289 of the Code is contrued, are relied upon as supporting that claim. A comparison of the language of the two statutes will show a marked difference in their legal effect as to the liability of the corporation. The one last cited makes it liable for live stock injured or killed, under certain conditions, by reason of the want of a fence, unless the damage was occasioned by the willful act of the owner or his agent, and also makes it liable for all damages by fire that is set out or caused by the operating of its railway. The language used necessarily makes the corporation liable without regard to contributory negligence on the part of the owner of the property injured or destroyed, but the statute in regard to the blowing of the whistle and the ringing of the bell at crossings is governed by a different rule. That statute imposes a duty upon the corporation, the omission of which is negligence, but, before the person injured by it can recover, he must show that his negligence did not contribute to the injuries. That was the construction placed upon a statute which required railway companies to erect signs at crossings, and made them liable for damages for injuries sustained by reason of their failure to erect them. *Dodge v. Burlington, C. R. & M. R'y Co.*, 34 Iowa, 279; *Payne v. Chicago, R. I. & P. R'y Co.*, 44 Iowa, 236. See, also, *Reed v. Chicago, St. P., M. & O. R'y Co.*, 74 Iowa, 190.

III. It is said, if the engineer saw the plaintiff in time to have avoided the accident, it was his duty to do so, notwithstanding her negligence, and that the jury should have been permitted to pass upon the question. As there was no evidence that the engineer saw the plaintiff, it was not error to take the question from the jury. The judgment of the district court is AFFIRMED.