MARY FORD, Administratrix, Etc., v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Railroads: Master and Servant: CATTLE GUARD IN SWITCH YARD. While a cattle guard is made, primarily, to turn stock, it must also be reasonably safe for men to cross, when it is located in yards where it is constantly required that employees shall cross it. *Heskett v. Railway*, 61 Iowa, 467, 16 N. W. Rep. 525. *Payton v. Railway Co.*, 70 Iowa, 522, 30 N. W. Rep. 877, *distinguished*.

Same: Contributory Negligence as a Defense. Code, 1288, requires the erection of sufficient cattle guards and provides, "and in order for the injured party to recover it shall only be necessary for him to prove such neglect or refusal." Under this statute, plaintiff need not, in the first instance, prove himself free from contributory negligence, but this does not deprive defendant of the right to use such negligence as a defense. *Payne v. Railway Co.*, 44 Iowa, 236; *McKelvy v. Railway Co.*, 84 Iowa, 458, 51 N. W. Rep. 172, *construed and distinguished*.

91 179
91 603
91 179
92 33
91 179
94 413
91 179
98 231
91 179
103 671
91 179
s106 87
91 179
114 478

Assuming Risk of Employment: RELIANCE ON PROMISE TO REPAIR
DEFECT. Plaintiff's claim that he remained at work because defendant promised him to repair a defective cattle guard, is not provable by promises made to another employee.

Rule of Railway: Construed: ADMISSIBILITY: ABROGATION IS MATTER OF DEFENSE. A rule providing that "employees are warned against taking risks in entering between cars while in motion to uncouple them. An employee careless of himself is liable to discharge," is more than merely advisory. It is a positive direction not to take the risks stated. The claim that it was abrogated by acts of the employees, known to the proper officers, does not affect the admission of the rule in evidence and constitutes defensive matter, merely.

*Appeal from Cedar District Court.*—HON. J. H. PRESTON, Judge.

FRIDAY, MAY 18, 1894.

ACTION to recover damages resulting from the death of H. P. Ford. Trial to jury. Verdict and judgment for plaintiff. Defendant appeals.—*Reversed.*

*Cook & Dodge* and *Wolf & Hanley* for appellant.

*Wheeler & Moffit* for appellee.

KINNE, J.—I. Plaintiff's intestate, H. P. Ford, was, on and prior to December 13, 1890, employed by the defendant as a yard switchman and brakeman in its yards at West Liberty, Iowa. He had been in defendant's employ for over five years, though he had been engaged in this yard service for only three months prior to his death. He was forty-five years old, of good habits and character; and had been recently married. He was earning forty-five dollars per month. His duties required him to couple and uncouple cars, and assist in making up trains under the direction of the yardmaster. The east switch in said yards is about ninety feet west of the east line of Columbus street. Defendant's main track crosses said street at a right angle, and the east line of the street enters upon

defendant's inclosed right of way; and at this point defendant had erected and maintained a cattle guard, which was constructed of ties or timbers laid crosswise of the track, with open spaces between the same, about eight inches wide, covering an open ditch, about three feet deep. Prior to his death, Ford well knew the location and character of the cattle guard, and frequently passed over it. On December 13, 1890, deceased was engaged with the engineer and fireman of the switch engine, and with another brakeman (all servants of the defendant), in switching some cars from a point east of the cattle guard to the switches west of said guard. At a point about seventy-five feet west of the cattle guard, Ford stepped between two of the moving cars to uncouple them. The pin which he tried to pull stuck, and he took another pin, and attempted to pound out the stuck pin,—the cars moving at such speed that Ford could walk between them along the track,—and, while thus engaged in trying to uncouple the cars, Ford stepped between the ties of the cattle guard, and was instantly killed by the cars running over him. The above facts are undisputed. Other facts which we think may be treated as established will be considered hereafter. The negligence charged is in not constructing and maintaining "a good, safe, and sufficient cattle guard, as by statute provided." It is also averred that plaintiff's intestate did not contribute by his negligence to produce his death. The answer takes issue on the averments of the petition that the intestate was not guilty of contributory negligence; charges that intestate, with full knowledge of the condition of the cattle guard, remained in defendant's service, and that the risk incurred was incident to the service which intestate contracted to perform; that intestate gave the signal on which the train was being moved when the accident occurred, and the intestate then had full control of the train; that intestate negligently, and

in violation of the rules of defendant, went between the cars, while in motion, to uncouple them. In a reply, plaintiff pleads notice to defendant as to the dangerous condition of the cattle guard, and its agreement to fix the same, as an excuse for continuing in its service; denies that the danger intestate incurred was a risk incident to the service which he contracted to perform; says the rule pleaded by defendant was advisory only, and had been abrogated. The case was tried by the court below upon the theory that it was incumbent upon defendant to maintain a good, sufficient, and safe cattle guard at the place where it was located, for the uses and purposes for which defendant habitually used it; that, if there was a neglect of defendant in constructing and maintaining a cattle guard, then any contributory negligence of intestate would not defeat a recovery.

II. Defendant offered in evidence a time-table of the Chicago, Rock Island & Pacific Railway Company for lines east of the Missouri river, Iowa division (which took effect October 19, 1890), with the printed rules attached thereto, and offered rule 31, printed on said time-table, which reads: "31. Employees *are warned against taking risks* in getting on or off trains or engines while in motion, in entering between cars to uncouple them while in motion, or in handling tools or machinery of any kind. They must protect themselves from personal injury by avoiding risks. Any employee who is careless of others, or himself, shall be liable to discharge from further service. Employees who may receive personal injuries in consequence of taking risks are hereby notified that they will have no claim on the company." This evidence was objected to—*First*, because the rule was merely advisory; *second*, that its violation by an employee is no defense in such an action, unless in its violation the employee is guilty of negligence proximately contributing to his injury; and, *third*, that

under Code, section 1288, the defense of contributory negligence is barred. It is conceded that the time-table and rule printed thereon and offered was in force when intestate was killed, and no objection was made as to the manner of proving the rule, and it is also agreed that intestate had knowledge of the rule since October 19, 1890. The objections were sustained, and an exception taken. We think the court erred in its ruling. This rule may in one sense be said to be advisory, yet it is more than that. It is a plain and positive direction to the employee not to take any risk in the manner stated therein. It was material as affecting the question of the intestate's negligence, and should have been admitted. If, as is claimed, it was abrogated by acts of the employees, known to the proper officers, that would be a matter for the consideration of the jury under the evidence, but would not affect the question of its admissibility. While such rules can not be made a means of legal escape from liability by the company, when they are not made with the expectation of being enforced, still a rule like that offered, made in good faith, and with the intention of being enforced, and having for its object the prevention of injuries to employees, is in the interest of humanity, and serves a useful purpose. The ground of the objection upon which the rule was excluded seems to have been the third,—that contributory negligence was no defense. This same question is raised by instructions given by the court. The determination of this question involves a construction of section 1288 of the Code, which provides that "every corporation constructing or operating a railway shall * * * construct at all points where such railway crosses any public highway good, sufficient and safe crossings and cattle guards. * * * And any railway company neglecting or refusing to comply with the provisions of

this section shall be liable for all damages sustained by reason of such neglect and refusal, and in order for the injured party to recover it shall only be necessary for him to prove such neglect or refusal."

It is contended by ,appellant that while the effect of the provisions at the close of the section quoted is to relieve plaintiff from proving his own freedom from contributory negligence in order to recover, the defendant still has thereunder the right to make any defense it may have, including the contributory negligence of plaintiff, while appellee claims that no contributory negligence of the intestate will affect plaintiff's right to recover. Assuming, now, that under the law it was defendant's duty to erect and maintain such a cattle guard as would be safe for the purposes for which it must be used, situated as it was, does the section quoted eliminate the defense of contributory negligence? Counsel refer to Code, section 1289, providing for fencing railways, and for recovery for live stock injured or killed, and for recovering for damages from fires set by railways. In this section the provision is that the railway company "shall be liable to the owner of any such stock injured or killed by reason of the want of such fence for the value of the property or damages caused, unless the same was occasioned by the willful act of the owner or his agent. And in order to recover, it shall only be necessary for the owner to prove the injury or destruction of his property." Under this provision it has been held that contributory negligence of an injured party was not a defense to an action for a violation of the provisions of the section. *Spence v. Railway Co.*, 25 Iowa, 139; *Aylesworth v. Railway Co.*, 30 Iowa, 459; *Inman v. Railway Co.*, 60 Iowa, 459, 15 N. W. Rep. 286; *West v. Railroad Co.*, 77 Iowa, 654, 35 N. W. Rep. 479, and 42 N. W. Rep. 512; *Engle v. Railroad Co.*, 77 Iowa, 661, 37 N. W. Rep. 6, and 42 N. W. Rep. 512. It will be observed that the

language of section 1289 is not the same as in 1288. In the former section, the company is made liable in terms, absolutely, unless the injury was the result of the willful act of the owner.

The provision of section 1288 is: "Shall be liable for all damages sustained by reason of such neglect and refusal, and in order for the injured party to recover it shall only be necessary for him to prove such neglect or refusal." Under section 1288, a liability is fixed, and it provides what the party seeking to recover must prove, in the first instance. If in such an action the plaintiff establishes the neglect and refusal of the company to comply with the statute, and the fact that he has sustained an injury by reason thereof, he has made a case entitling him to recover, in the absence of evidence offered by the defendant; but it seems to us that the language used does not cut off the right of defendant to establish the fact, as a defense, that the injury was the result of the intestate's contributory negligence, or, in a proper case, the fact of independent negligence on his part, or any other defense it may have. In *Sala v. Railroad Co.*, 85 Iowa, 678, 52 N. W. Rep. 664, this court construed section 1, chapter 104, Acts, Twentieth General Assembly, which provides "that a bell and a steam whistle shall be placed on each locomotive engine operated on any railway in this state, and said whistle shall be twice sharply sounded at least sixty rods before a highway crossing is reached, and after this sounding of the whistle the bell shall be rung continuously until the crossing is passed, * * * and the company shall also be liable for all damages which shall be sustained by any person by reason of such neglect." It was said that there was a marked difference in the legal effect of this provision and that in section 1289 of the Code. "That statute [providing for blowing the whistle and ringing the bell] imposes a duty upon the corporation, the omission of which is negligence, but,

before the person injured can recover, he must show that his negligence did not contribute to the injuries. That was the construction placed upon a statute which required railway companies to erect signs at crossings, and made them liable for damages for injuries sustained by reason of their failure to erect them. *Dodge v. Railroad Co.*, 34 Iowa, 279; *Payne v. Railroad Co.*, 44 Iowa, 237. See, also, *Reed v. Railway Co.*, 74 Iowa, 190, 37 N. W. Rep. 149." This statute as to blowing the whistle and ringing the bell is substantially like the provision in section 1288, except that in 1288 these words are added: "And in order for the injured party to recover it shall only be necessary for him to prove such neglect or refusal," and this has the effect of casting the burden of proving contributory negligence on the defendant. In *Manwell v. Railway Co.*, 80 Iowa, 662, 45 N. W. Rep. 568, the action was to recover for injuries to stock, caused by leaving gates open on the railroad right of way, under section 1289 of the Code, and in construing the same the court said: "The statute provides that, in order to recover, it shall only be necessary for the owner to prove the injury or destruction of his property; but it is manifest that, in order to recover, the owner must prove other facts, * * * The provision quoted was designed to change the burden of proof to some extent, and thus enable the owner to make a *prima facie* case by proving fewer facts than would be required in the absence of the statute." We think the provision in section 1289, providing for recovery unless the stock was killed by reason of the willful act of the owner, distinguishes that section, in legal effect, from the provisions of the one in the case at bar, in so far as the defense of contributory negligence is concerned, and that such negligence is a defense under section 1288, in this case. It is true that some language is

used in other cases which tends to an opposite conclusion. Thus, in *Payne v. Railroad*, 44 Iowa, 236, it is said, in effect, that by section 1288 the liability was absolute, regardless of the question of contributory negligence, but this can hardly be treated as binding as a precedent, as in the decision of the case it was not necessary to construe this section, for the reason that the case arose prior to its enactment. In *McKelvy v. Railway Co.*, 84 Iowa, 458, 51 N. W. Rep. 172, the court, in speaking of contributory negligence, said: "It is not our purpose to hold that proof of such negligence would excuse the defendant company from liability, for the language of section 1288 seems to exclude such a rule." That question, however, was not passed upon in the case, the decision resting on the fact that, in any event, independent negligence of the deceased would be available as a defense to the defendant. This precise question was presented in *Moriarty v. Railway Co.*, 64 Iowa, 700, 21 N. W. Rep. 143, but was not decided. *Lang v. Mining Co.*, 49 Iowa, 469, was a case under section 1288, wherein the company had failed to put up a signboard as therein provided. It was claimed that the defendant was liable, regardless of the negligence of intestate. The court held that the accident did not result from the failure to erect the sign. It seems to us clear that section 1288 of the Code imposes certain duties on railroad companies; for a failure to perform them, resulting in damages, an action lies; and recovery may be had by proving the neglect or refusal, and that the party was injured as a result thereof. When this is done, a *prima facie* case is made, which, in the absence of testimony by the defendant, the statute provides shall be sufficient to warrant a recovery. The defendant, however, may establish any defense it may have, including the contributory negligence of plaintiff's intestate. The statute provides what it shall be neces-

sary for "*him*" (the injured party) to prove. It does not directly or by fair implication eliminate any defense which is ordinarily available to the defendant. In this view, the court not only erred in rejecting the offered evidence, but also in its instructions, in so far as they are so worded as to permit a recovery regardless of the contributory negligence of plaintiff's intestate.

III. The court below, in substance, instructed the jury that the cattle guard in question must be good, sufficient, and safe for all the uses and purposes for which defendant was habitually using it at and prior to the time of the accident. These instructions were excepted to, and an exception was taken to the court's refusal to give certain instructions to the jury embodying the thought that it was only incumbent on the defendant to erect and maintain such a cattle guard as would be sufficient and safe to turn stock. We think the instructions given by the court touching this matter were correct, and those asked were rightly refused. The evidence, without conflict, shows that this cattle guard was at a point where the defendant's employees were constantly compelled to cross and recross it in switching cars and in making up trains, and, as located with reference to the necessity of the defendant's employees passing over it in the proper discharge of their duties in switching cars, it is aptly called by one of the witnesses a "man trap." It may be conceded that, primarily, a cattle guard is for the purpose of turning stock. It may also be conceded that, by law, defendant was required to erect and maintain a cattle guard at the point where this one was located. But we can not believe that the legislature intended that a railroad company might erect and maintain such a cattle guard at a point where it was by law required so to do, and which would be sufficient to turn stock, and then so locate its switch-

ing yards adjacent thereto as to require its employees to constantly cross the cattle guard without any protection to life or limb. If it be necessary, in the prosecution of defendant's business, to locate its yards so, as in this case, to virtually embrace a cattle guard, then it is clear that defendant owes the duty to its employees, whom it requires to constantly cross it in the proper discharge of their duties, to make such guard reasonably safe for all such uses and purposes. That the guard in question was not good, sufficient, or safe as a crossing for employees must be conceded. We are cited to cases where this court has held that a cattle guard "means such an appliance as will prevent animals from going upon the land adjoining the right of way," (*Heskett v. Railway Co.*, 61 Iowa, 467, 16 N. W. Rep. 525), and that the obligation to maintain it is founded only on the relation of the company to the public (*Peyton v. Railway Co.*, 70 Iowa, 522, 30 N. W. Rep. 877). But it must be remembered that the language used in these cases had reference to the case then made before the court. The precise point in issue in this case, as to the necessity for making a cattle guard reasonably safe for employees who are, in the performance of their duty, required to pass over it, has never before been passed upon by this court. Even if it be conceded that to make such a cattle guard as will be reasonably safe for employees, when situated and required to be used as this one was, would to some extent impair its efficiency as a guard to turn stock (a point we need not determine), still the defendant would not be relieved of its duty to its employees in this respect. In such a case the safety of the traveling public and of the employees should both be considered by the erection and maintenance of such a guard as will best comply with the provisions of the law, having due regard to all the purposes for which it must be used. We may properly say that no switch yard

should be so located, if it is practicable to avoid it, as to require employees, in the switching of cars, to cross and recross a cattle guard. Whether the guard in question was good, sufficient, and safe, in view of all the purposes for which it was required to be used, was a question properly submitted to the jury.

IV.   The witness Mickey was asked about complaints or protests he had made, while in the defendant's employ, touching the defective condition of the cattle-guard for the use of employees in working over it.   The questions were objected to as immaterial and irrelevant.   The objections were overruled. The issue was as to whether Ford had made complaints, and received promises, upon which he had a right to rely, that the defect would be remedied, and in the faith thereof he was induced to remain in the defendant's employ.   This could not be established by proving promises made to another, who had protested against working on the cattle guard. The objections should have been sustained.

V.   We have examined the record with care, and discover no other errors.   In view of the reversal of the case, it is not proper for us to discuss matters relating to the weight or sufficiency of the testimony.   RE-VERSED.