94 409
131 36

CHARLES HANSON V. THE CHICAGO, ST. PAUL & KANSAS CITY RAILWAY COMPANY, Appellant.

**Railroad Crossing:** NEGLIGENCE. Where a railroad fails to make an approach to a crossing of sufficient width, it is liable for an injury done plaintiff by the fact that his horse became frightened by obstructions, placed by defendants within the line but outside of the traveled portion of the highway, and pitched him over the approaching embankment.

**Practice.** In actions for injury through unsafe crossings, brought under Code, 1288, plaintiff need not prove himself free from contributory negligence, though defendant may urge the fact that the injury was due to plaintiff's negligence, as a defense.

*Appeal from Fayette District Court.*—HON. L. O. HATCH, Judge.

SATURDAY, APRIL 6, 1895.

Action at law to recover for a personal injury. Trial by jury. Judgment and verdict for the plaintiff. Defendant appeals.—*Affirmed.*

*Lyon & Lenehan* and *D. W. Lawler* for appellant.

*H. W. Holman, D. W. Clements & Son,* and *A. J. Anders* for appellee.

Rothrock, J.—I. The injury for which the plaintiff seeks to recover was received by him at the town of Oelwein, in Fayette county, and at the crossing of a public highway or street over the defendant's railway track. The public highway is one which is and has been much used for travel, it being a main thoroughfare from the town into the country. When the railroad was constructed, there was an embankment of about eight feet at the point of intersection with the highway,

so that it was necessary to make elevated approaches at each side of the railroad track. The plaintiff and his son were driving a single horse hitched to a top buggy over the road, and, as they drove up the approach, the horse turned, and went down over the bank of the approach, and the plaintiff was thrown out of the buggy, and severely injured. The negligence complained of in the petition is that the approach or crossing was so narrow that it was insufficient, unsafe, and dangerous to travelers on said public highway, and that at the time of the accident the defendant had negligently placed a pile of lumber along by the traveled track, and close to the railroad track, and also placed a hand car near to the crossing, and that as plaintiff approached the crossing, "without fault or negligence on his part, and while using due care to avoid accident or danger, the horse that he was driving became frightened at the said obstructions in the highway, and pitched or fell off from the top of the embankment." The answer was a general denial, and an averment that any damage sustained by defendant "was caused by his own negligence and want of care, and not from any negligence or want of care done, or omitted to be done, by the defendant." There was evidence in the case from which the jury were fully warranted in finding that the horse became frightened at the lumber or car, or both, and that he backed and turned and went off the embankment. Indeed, the statement made by two or more witnesses, who claim to have seen the accident, to the effect that the horse was not frightened, but that he gently turned and walked down the embankment, is not only in conflict with the testimony of other witnesses, but is so contrary to the common knowledge of men that a jury would not be inclined to accept it as true. And we think a finding that the horse was

frightened at the lumber or car, or both, was fully sustained by the evidence.

The court submitted to the jury certain interrogatories, which, with the answers returned, are as follows: "(1) Where was the push car standing at the time the plaintiff's horse passed down the slope of the approach to the crossing? Ans. On the track at or near the cattle guard, north of the center of the highway. (2) Where were the planks that the agents of the railroad company took to the crossing in question at the time the horse passed down the slope of the approach? Ans. On the north side of the highway, near the railroad track. (3) What was the width of the surface of the approach for a distance of forty feet west of the track? Ans. From twenty-five to fifteen feet wide. (4) What was the width of the approach at the place where the accident occurred? Ans. Fifteen feet wide." These findings of the jury were found upon sufficient evidence. It is true there was a decided conflict in the evidence as to the width of the approach and the location of the lumber and car, but no court would be justified in holding that these findings are without support in the evidence.

II. The question is made by appellant that, the obstructions not being within the traveled part of the roadway, it must be shown that the injury occurred by reason of the obstructions, and that they were such as would frighten a gentle horse. It is possible this is a correct rule. When an object is temporarily placed within the line of a public road, as designated by law, but outside of that part of the road which is improved and traveled, it appears to us to be reasonable that the driver of a team, who is injured by reason of his horses becoming frightened at the obstruction, ought to present such a state of facts as that a jury might find that the obstruction was such as would frighten an ordinarily

gentle team. But, however that may be, we have no occasion to determine it in this case. It is true the plaintiff introduced no witnesses who testified that the lumber and car were calculated to frighten a gentle horse. But there was evidence that the horse driven by plaintiff was gentle, and that he was frightened at the lumber and hand car, and the jury found that the approach was fifteen feet wide at the place where the accident occurred. If the horse went over the bank because it was so narrow that the driver could not turn him round, then the proximate cause of the injury was the insufficient and unsafe and narrow crossing, or it was the result of two efficient causes,—the unsafe approach, and the fright of the horse. Section 1288 of the Code provides that "every corporation constructing or operating a railway shall * * * construct at all points where such railway crosses any public highway, good, sufficient and safe crossings; * * * and any railway corporation neglecting or refusing to comply with the provisions of this section shall be liable for all damages sustained by reason of such neglect and refusal, and in order for the injured party to recover it shall only be necessary for him to prove such neglect or refusal." Now, if the injury to plaintiff occurred by reason of the crossing being insufficient and unsafe, and, in addition thereto, the defendant put obstructions within the lawful line of the highway which made the narrow approach more unsafe, the injury resulted by reason of the neglect and refusal of the defendant to construct and use the crossing in a proper manner. The fact that the defendant placed obstructions in the highway, which might not ordinarily frighten gentle teams, and that the horse was frightened thereat, is no defense for the construction and maintenance of a narrow and dangerous crossing. That the crossing was insufficient is not only

shown by the finding of the jury that it was fifteen feet wide, but it appears that the road supervisor in office when it was constructed testified that, when the approach was made, he told them he wanted it "twenty-five feet wide, but they wouldn't do it." Another witness testified that "the buggy, I think, from outside to outside, is, I would say, six feet; and I should say two buggies could not pass on that space. It might be possible, but a man of judgment would not attempt it." In *Railway Co. v. Crist* (Ind. Sup.) 19 N. E. Rep. 310, the following language is employed: "The wrong of the defendant in negligently failing to restore the highway is, as we have seen, of itself sufficient to constitute a cause of action. The additional act of negligence in the management of the hand car, if not considered as adding strength to the complaint, cannot, at all events, detract from it; but we think that the fact that the defendant, by its own wrong, rendered the highway unsafe, made it necessary for it, in operating its road, to exercise care to prevent injury to one placed in danger by that wrong. We are not dealing with a case where the railroad company was not guilty of any breach of duty respecting the highway on which the plaintiff was traveling, but with a case where, in violation of a positive duty, it wrongfully interfered with a highway. Here the two wrongs blend in one concurrent tort."

III. The defendant requested the court to instruct the jury upon the rights of the parties based upon the alleged contributory negligence of the plaintiff. These instructions were refused. This court has held that contributory negligence, as it is usually applied, has no place in an action under the statute upon which this case is founded. *McKelvey v. Railway Co.*, 84 Iowa, 455, and *Ford v. Railway Co.*, 91 Iowa, 179. It is held in those cases that, where the plaintiff

has shown that the injury was sustained and the defendant was negligent, it is not incumbent on plaintiff to show affirmatively that he was free from contributory negligence, but that it was competent for the defendant to prove that the plaintiff ought not to recover because of his own negligence.    The ninth paragraph of the charge to the jury is as follows:    "The question as to what caused the plaintiff's injuries should receive your careful attention.    Were these injuries the result of the causes alleged by the plaintiff,—the frightening of the horse and a defective crossing,—or were these injuries the result of some other cause or causes?    If they were the result of some other cause or causes than those alleged by plaintiff, he cannot recover.    The defendant alleges that these injuries were the result of plaintiff's own carelessness.    It is hardly necessary to add that, if you find this to be the fact, your verdict should be for the defendant."    We think this instruction covers every reasonable consideration as to the negligence of the plaintiff, as set out in the answer.    It will be remembered that the defendant's answer did not set up that the negligence of the plaintiff contributed to the injury, but that the injury was caused by his own negligence. Following that averment, the court plainly directed the jury that, if it was true, the verdict should be for the defendant.    There was no objection made to the right of the defendant to introduce evidence showing negligence of the plaintiff, and such evidence was introduced.    We think the case was fairly submitted to the jury, and that the court did not err in giving and refusing instructions.

IV.    Many questions are presented as to the alleged errors of the court in rulings on the admission of evidence.    We discover no error in the rulings complained of, and we think they demand no special con-

sideration.   Upon a careful examination of the whole record, we find no error, and the judgment of the district court is *affirmed*.