William E. Nixon, Appellant, v. Chicago, Rock Island & Pacific Railway Company, Appellee.

**Personal Injury:** CONTRIBUTORY NEGLIGENCE. One who, in full possession of his senses, and without having his attention diverted from any cause, passes over a railroad crossing without looking in both directions to see if there is an approaching train, is guilty of contributory negligence, and will not be entitled to recover for injuries received from a passing train, though no whistle was blown nor bell rung from the engine as required by law.

*Appeal from Wapello District Court.*—Hon. C. D. Leggett, Judge.

Tuesday, January 26, 1892.

The plaintiff commenced this action to recover damages sustained by a personal injury received by a collision with a train of cars at a public road crossing about one half mile from Eddyville. The defendant answered by a general denial. The cause was tried to a jury. The plaintiff introduced his evidence; and the defendant, without offering any evidence, moved the court to instruct the jury to return a verdict for the defendant. The motion was sustained and the verdict returned as ordered, and from a judgment thereon the plaintiff appeals.—*Affirmed.*

*T. B. Perry* and *W. H. C. Jacques*, for appellant.

*T. S. Wright* and *McNett & Tisdale*, for appellee.

Rothrock, J.—The train by which the plaintiff was injured was a passenger train on the defendant's road running south from Des Moines. It is not claimed that it was running at an improper rate of

speed. The evidence shows that the whistle on the engine was not sounded nor the bell rung before approaching the crossing. The ruling of the court was upon the ground that, notwithstanding there was no signal for the crossing, the plaintiff was negligent in driving on the railroad crossing without discovering the approaching train. This is the sole question involved in the appeal.

It is conceded by counsel, for the appellant that ordinarily there is no excuse for one, about to cross a railroad track, to recklessly drive upon the crossing without stopping and looking and listening for an approaching train; and this rule has so frequently been announced by this court, as well as the courts elsewhere, that we need not cite the cases. Probably as clear a statement of the rule as has been made is to be found in Pierce on Railroads, page 343. It is as follows: "A traveler upon a highway, when approaching a railroad crossing, ought to make a vigilant use of his senses of sight and hearing in order to avoid a collision. This precaution is dictated by common prudence. He should listen for signals, and look in the different directions from which a train may come. If, by neglect of this duty, he suffers injury from a passing train, he cannot recover of the company, although it may itself be chargeable with negligence, or have failed to give the signals required by a statute, or be running at the time at a speed exceeding the usual rate." The above rule is sustained by a multitude of adjudged cases. They will be found collected and cited in 4 American & English Encyclopedia of Law, p. 70.

It is true there are exceptions to this rule. There may be such circumstances surrounding the traveler as that his failure to look and listen for a train may exonerate him from the charge of contributory negligence; or rather, such failure may under some circumstances rebut the apparent negligence, and require that the question be submitted to the jury.

The traveler may be placed, without his fault, in some dilemma, some place of danger, where the exigencies of his situation and an emergency may excuse him for going on the track without looking and listening. Such exceptions are shown in the cases of *Laverenz v. C., R. I. & P. Ry. Co.*, 56 Iowa, 689; *Funston v. C., R. I. & P. Ry. Co.* 61 Iowa, 452; *Schmidt v. Burlington, C. R. & N. Ry. Co.*, 75 Iowa, 606. These and other cases which might be cited serve to show what conflicting and unusual circumstances will be an excuse for a failure to discover an approaching train. These circumstances are so varied that they cannot be cited and commented upon in an opinion without unduly extending the subject. They involve obstructions on the track which prevent an approaching train from being seen by the traveler; and, where there are several tracks and trains running on them in different directions, and one train obscured by another, the fact that the railroad track is in a deep cut, and trains cannot be seen by a traveler approaching the crossing, trains following each other in close proximity, which serve to confuse the traveler, and numberless other circumstances from which a jury may be authorized in finding that the traveler exercised the precaution which an ordinarily prudent person would exercise under the same circumstances.

The question to be determined in this case is, whether the plaintiff, by the evidence which he introduced, made a case coming within the exception, and which should have been submitted to the jury. We will not attempt to set out the evidence in detail, nor to quote from the testimony of the witnesses. We will, as briefly as may be, give the facts which are established by the undisputed evidence. The plaintiff was a resident of Eddyville, and had been such resident for many years before he was injured. The accident happened at Williams' crossing, about one half mile north of Eddyville. From the crossing north the rail-

road and the public highway are parallel, and run side by side, with only a dividing fence between them. The public road is on the east side of the railroad. The grade of the railroad is from two to two and a half feet higher than the public road for some distance north of the crossing. About sixty rods north from the crossing there is what is called "Scribner's Crossing." As we understand it, this is a private or farm crossing. But the character of this crossing is not material. The plaintiff was familiar with both crossings, and with the traveled road. He had farmed some land west of Scribner's crossing for two years, and while so engaged he passed to and from his farming to his home in Eddyville. The accident occurred on the morning of September 6, 1888, between nine and ten o'clock. On that morning he left his home at Eddyville with an ordinary lumber wagon drawn by two horses. He went over Williams' crossing and up the public highway along the railroad, and crossed back over the railroad track at Scribner's crossing, and into his cornfield, and cut and put some corn on the stalk in his wagon box, crossed back over Scribner's crossing and down the road to Williams' crossing, where the accident occurred. He drove his team all the way between the two crossings at a moderate trot. The road was sandy and the wagon made but little noise. There is no evidence that his horses were liable to become unmanageable if a train should pass while he was on the road; nothing to show that the horses were not gentle and easily managed. The plaintiff was then a young man, aged thirty-one years, and in full possession of all his senses. He did not cease to drive his horses on a trot until he was right on the railroad. The distance between the two crossings is about sixty rods. There were some trees standing near the track for about ten rods south of Scribner's crossing, which, with some weeds that grew between the wagon road and railroad, obstructed the view of the traveler on the road

beyond the trees.   By this it is to be understood that a traveler on the public road could not see a train approaching from the north until it passed the trees. From the last tree on the south down to the Williams' crossing is a distance of about fifty rods, and a traveler could plainly see a train approaching from the north. The plaintiff testified as a witness that he looked to the north for a train at a point "one hundred or one hundred and eighty feet" from the Williams' crossing. The only reason upon which any excuse can be based for failure to see the train is that the plaintiff was looking for a train which he supposed was due from the south, and therefore did not expect a train to be approaching from the north.   There was no emergency requiring him to choose between standing still or looking and listening until he assured himself that no train was approaching from the north.   It is claimed in his behalf that the view of the road to the south of Williams' crossing was obstructed so that he could not see whether a train was coming from the south, and that the train from the south was due before the train from the north.   It is enough to say, in answer to this, that the traffic and running of trains on railroads is such that there can be no excuse for a traveler to coolly and calmly approach a railroad track and look but one way.   The train with which the plaintiff collided was running at the rate of from twenty to twenty-five miles an hour, and if the plaintiff, at any time before he drove his team on the crossing, had given the slightest attention to his safety, he would have seen the train and avoided the accident.   The judgment of the district court is AFFIRMED.