J. J CRODDY, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

Injuries to Stock: RAILROADS: BURDEN OF PROOF. Under Code, 1288, requiring railways to maintain safe cattle guards, etc., and "the injured party" need but prove neglect so to do in order to recover "all damages sustained by reason of such neglect," the plaintiff must prove that his stock was killed by reason of defects in the cattle guards.

SAME. A charge that the presumption is that the stock was not struck where the railroad had a right to fence, is erroneous, but without prejudice, where the plaintiff would fail, at all events, for lack of proof as to where the injury occurred.

EVIDENCE. Evidence that stock had frequently been killed at a certain crossing where the injury in suit is claimed to have happened is properly rejected.

CIRCUMSTANTIAL EVIDENCE: INSTRUCTION. A charge confining the jury to facts directly proven and inferences fairly arising therefrom, does not exclude the consideration of circumstantial evidence.

Practice: SAVING RECORD: SHORTHAND NOTES. Where the judge certifies the notes by distinct reference, incorporating them into a bill of exceptions, and the reporter certifies a translation after the judge has gone out of office, the notes are part of the record.

SAME: INSTRUCTIONS. Where a bill of exceptions states that instructions set out in an exhibit attached to the bill, "numbered one to —— excepting Nos. ——" were excepted to, and said exhibit contains instructions numbered from one to twelve, there is a sufficient exception as to all twelve.

ON APPEAL. Appellant's amended abstract filed one month after one by appellee and three months before appellee's argument will not be stricken.

*Appeal from Wapello District Court.*—HON. F. C. MITCHELL, Judge.

FRIDAY, OCTOBER 5, 1894.

ON the seventh day of October, 1889, a colt belonging to plaintiff was killed by a train of cars on defendant's line of road, at or near what is known as "Beller-

ton's Crossing," in Wapello county. This action was brought to recover the value of the colt, on the grounds: *First*, that the crossing was in a dangerous and unsafe condition; *second*, that the train was negligently and carelessly operated; and, *third*, that the accident occurred at a place where the defendant had a right to fence and failed to do so. The answer of the defendant company was a general denial. The case was tried to a jury, and a verdict and judgment was rendered for defendant, and plaintiff appeals.—*Affirmed*.

*W. H. C. Jaques* for appellant.

*McNett & Tisdale* for appellee.

DEEMER, J.—I. Appellee has filed a motion to strike appellant's amended abstract from the files. This amendment was in response to an amended abstract presented by appellee, and was filed July 21, 1893, with appellant's opening argument. The original abstract was filed June 20, 1893, appellee's amended abstract June 26, 1893, and the appellee's argument was not filed until September 26. We think, in view of these facts, that the motion should be overruled. *Palo Alto Co. v. Harrison*, 68 Iowa, 81, 26 N. W. Rep. 16; *Frost v. Parker*, 65 Iowa, 178, 21 N. W. Rep. 507; *Wells v. Railroad Co.*, 56 Iowa, 520, 9 N. W. Rep. 364.

II. It is also insisted that the case can not be considered upon the evidence, for the reason that the translation of the shorthand notes was not certified by the presiding judge. The record, shows, however, that the shorthand notes were duly certified by the judge who tried the case, and that he signed a bill of exceptions, which referred to and incorporated, by plain and distinct reference, the shorthand notes so certified by the judge and the official reporter. These notes were afterward translated and

certified by the reporter alone, the trial judge in the meantime having gone out of office. The evidence was, in our opinion, properly preserved, and became a part. of the record in the case. *Hammond v. Wolf*, 78 Iowa, 227, 42 N. W. Rep. 778; *Fleming v. Stearns*, 79 Iowa, 256, 44 N. W. Rep. 376.

III. The bill of exceptions recites: "On the trial of this cause the court gave to the jury instructions numbered 1 to ——, inclusive, which were all the instructions given to the jury in the cause, and to the giving of each of which, except numbers ——, the plaintiff duly excepted at the time. Said instructions are entitled in the cause filed therein, 1892, and marked 'Exhibit C' to plaintiff's bill of exceptions number 1." It will be noticed that several blanks in this paragraph are not filled out, and it is contended for this reason the instructions were not properly excepted to. The instructions given are, by proper reference, incorporated into the bill of exceptions, and, looking to them, we find they are numbered from one to twelve inclusive. The statement in the bill in effect is that "each and every of the instructions given were at the time duly excepted to, except numbers ——." Treating this exceptive clause a surplusage, as we think we ought, the exception is suffcient to call in question each of the instructions.

IV. At the trial, and in this court, the plaintiff has abandoned the second count or cause of action,— that is, that wherein he charged that the accident was due to the negligence and careless management of the train; and it appears that the court submitted to the jury the last count, wherein it was alleged that the colt was struck at a place where the company had a right to fence, and failed and neglected to do so.

Complaint is made of the failure of the court to submit the first count, wherein it was charged that the accident was due to a faulty and defective highway

crossing. That the crossing was out of repair and in an unsafe condition there can be no doubt, but the evidence shows that the colt was killed some time in the night, and there is no testimony showing where the animal was at the time it was struck, nor is there anything in the record from which it could properly be said that the animal was killed by reason of the defective condition of the crossing. All this was left to conjecture. Code, section 1288, provides, eliminating some immaterial matters: "Every corporation constructing or operating a railway shall make proper cattle guards where the same enters or leaves any improved or fenced land, and construct at all points where such railway crosses any public highway, good, sufficient and safe crossings and cattle guards, and erect at such points at a sufficient elevation from such highway to admit of free passage of vehicles of every kind, a sign with large and distinct letters placed thereon to give notice of the proximity of the railway and warn persons of the necessity of looking out for the cars; and any railway company neglecting or refusing to comply with the provisions of this section shall be liable for all damages sustained by reason of such neglect and refusal, and in order for the injured party to recover, it shall only be necessary for him to prove such neglect or refusal." Appellant contends that under this section all that is necessary for him to do is to prove that his animal was killed at or near the defective crossing, and that the burden then shifts to the railway company to show that the defective crossing was not the approximate cause of the killing. We do not think the statute will bear this construction when applied to the facts of this case. The highway at the point in question runs almost directly north and south, and the railway runs from the northwest to the southeast, crosses the highway obliquely, forming what is called the "Bellerton Crossing." The cattle guards on

either side of the highway are placed at right angles to the railway. The highway fence on the south side of the railway and on the east side of the highway follows a straight line to the center of the south side of the cattle guard. And it is claimed that this fence is some three or four feet east of the east line of the highway. On the north side of the railway and the east side of the highway the highway fence comes down to the railroad right of way, and then obliques off to the east, joining onto the culvert near its center, forming a triangle upon the right of way, the base of which, resting on the railway track, is ten or twelve feet long. This triangular piece of ground, which is fenced only on the east side, is called a "pocket" by counsel, and some claim is made that the animal may have been in there when struck. There is another so-called "pocket" formed in the same manner on the south side of the track and the west side of the highway. At one time a ditch ran across the approach to the crossing on the north side of the track, and the culvert bridged this ditch, but at the time of the accident the east half of the ditch was filled up level with the surrounding ground. The west end of the ditch was from twelve inches to two feet deep, and the culvert spanning this portion of it was broken or rotten so that no crossing could be effected over that part. The water which in times past flowed through this ditch turned its course through the cattle guard at the west side of the highway, crossed the track, and ran south along the west side of the highway. The railroad company, to save its roadbed, put in a retaining wall south of its track and west of the highway, but, as we understand the testimony, this stone retaining wall was no higher than the surface of the ground, and no obstruction to travel. Planks were laid between the rails of the railway and just outside thereof in the usual manner, and no complaint is made of them. On the south side of the railway and east

side of the highway was a pile of timber which had been taken from the culvert. This pile was from six to eight feet from the railway track and ten feet from the traveled part of the highway. It was two or three feet high and six or eight wide. The railway track proper, east and west of the plank crossing, was ballasted with stone filled in between the ties to a level with the tops of them. This raised the track about six inches from the ground. Plaintiff's colt was found dead the morning of the eighth of October, east of the wagon road and south of the railway, about fifty feet from the east cattle guard. It had evidently struck a post in the fence where it joins the cattle guard, for the post was broken near the top.

There is no evidence whatever as to where the animal was when struck, nor is there anything to show that the animal was injured on the crossing, or by reason of its condition, unless we may infer that because the crossing was unsafe the colt was injured by reason of it. The statute under consideration has been the subject of review in many cases, and we think it has uniformly been held, where the question was properly presented, that the plaintiff must show that he was damaged by reason of the defective crossing. See *Manwell v. Railway Co.*, 80 Iowa, 662, 45 N. W. Rep. 668; *Wall v. Railway Co.*, 89 Iowa, 193, 56 N. W. Rep. 436; *Ford v. Railway Co.*, 59 N. W. Rep. 5. True, some of these cases relate to section 1289 of the Code, but the language of that section is almost identical with the clause of the statute under consideration, and the rule announced in these cases is applicable to the question here presented. Looking to the statute itself, it is plain, to our minds, that no other construction can be placed upon it. The railway company is liable for all damages sustained by reason of its neglect or refusal to construct and maintain good, sufficient, and safe crossings; and, in order

for the injured party—that is, the one who is damaged by reason of this neglect or refusal—to recover, he need only prove such neglect or refusal.

Plaintiff must show that he is a person injured by reason of the failure of the railroad company to do its duty. It will be noticed that there was a question in the case as to whether the colt was killed upon the crossing or at a place where the railroad company had a right to fence. Surely the plaintiff was required to show that the accident was upon the crossing, and not at some other place. In this he failed, and the court was right in not submitting the question of injury by reason of the defective crossing to the jury.

V. The court instructed the jury, in submitting the third count, in effect, that the presumption was that the colt was struck in the highway, and not at a place where the defendant had a right to fence. This instuction was clearly erroneous. There is no presumption as to where the animal was struck. This was a question of fact, the investigation of which was not aided by any presumption whatever. It may be that the court merely intended this as a statement that the burden was upon the plaintiff to show where the animal was when the train struck it, but it is apparent that the instruction does more than this. It requires the plaintiff to produce not only a preponderance of the evidence, but to overcome a presumption as well. However, it is conceded by counsel for appellant that there is no evidence as to where the animal was when it was struck, and a careful examination of the testimony leads us to the conclusion that if the verdict had been for plaintiff, under proper instructions, it would have been the duty of the court to set aside the verdict, and award a new trial. The error, then, was without prejudice, and the statue requires us to disregard any error or defect in the proceedings which does not affect the substan-

tial rights of the adverse party, and further provides that no judgment shall be reversed for or affected by any such error or defect. Code, section 2690. See, also, *Middleton v. Middleton*, 31 Iowa, 151; *Land Co. v. Hillis*, 76 Iowa, 246, 41 N. W. Rep. 6; *Wilson v. Trowbridge*, 71 Iowa, 345, 32 N. W. Rep. 373; *Phelps v. Walkey*, 50 N. W. Rep. (Iowa) 560.

VI.   The sixth instruction was as follows: "(6) Your verdict must not be founded on mere guesses, speculations, or far-fetched inferences. You must confine yourselves to facts directly proven, and the inferences that fairly arise therefrom. It is not for the defendant to prove that the colt was struck in the highway, but it is for the plaintiff to prove it was not struck in the highway, but was struck on the right of way. That is, if the evidence fails to show where the colt was struck, then your verdict should be for the defendant, as well as if it shows that it was struck on the highway; but if the facts directly proven, and the fair and natural inferences arising therefrom, fairly prove that the colt was struck on defendant's right of way, then your verdict may be for the plaintiff." Complaint is made of it because it is said it directs the jury to disregard all circumstantial evidence. We do not think it will bear the construction placed upon it by appellant's counsel. The court directs the jury to consider not only the facts directly proven, but also the inferences that fairly arise therefrom. This includes circumstantial evidence.

VII.   Plaintiff offered to show, by witness Moore and others, that stock had repeatedly been killed at this crossing prior to the accident in question, but the court would not permit him to do so. The ruling of the court was right. *Hudson v. Railway Co.*, 59 Iowa, 581, 13 N. W. Rep. 735.

VIII. What we have said disposes of all other questions presented by this appeal, and, finding no prejudicial error in the record, and believing that justice has been done, the judgment is AFFIRMED.