W. R. REEVES v. THE DUBUQUE & SIOUX CITY RAIL-
WAY COMPANY, Appellant.

Railroads: INJURY AT CROSSING. One who is familiar with a crossing,
knows that a train is due, drives to crossing rapidly, and with track
in plain sight does not look or listen anywhere within twenty rods of
the crossing, contributes to injury received by his team.

Contributory Negligence is defense to an action brought under Code,
1288, allowing recovery upon proof that there was neglect or refusal
to maintain a safe crossing.

*Appeal from Lyon District Court.*—HON. SCOTT M. LADD,
Judge.

WEDNESDAY, OCTOBER 10, 1894.

*John F. Duncombe* and *J. M. Parsons* for appel-
lant.

*McMillan & Dunlap* for appellee.

KINNE, J.—I.   The petition is in several counts.
The first count charges that without fault on his part,
and while driving across defendant's railway track, the
defendant carelessly and negligently ran its train into
his team, to his damage.   The second count charges,
in addition to what is stated in the first count, that the
accident resulted by reason of a defective crossing.
Damages are claimed in the sum of four hundred dol-
lars for the destruction of the team and harness.   The
defendant admits its corporate capacity, and that it
owned and operated the railroad, which it had been
operating but a short time; that plaintiff's team was
killed; and denies all other allegations in the petition.
The cause was tried to a jury, and at the conclusion of
plaintiff's testimony the court, on defendant's motion,
directed the jury to return a verdict for it.   The
grounds of the motion were that it was not shown that

defendant was negligent; that it appeared that plaintiff was guilty of contributory negligence, which produced the injury; that there was no evidence that the condition of the crossing contributed to produce the accident. A motion for a new trial was filed and sustained, and from this ruling the appeal is prosecuted. —*Reversed*.

II. It is said in argument that the reason that the trial court sustained the motion for a new trial was because of the holding in the first opinion in the case of *McKelvy v. Railway Co.*, 84 Iowa, 455, 51 N. W. Rep. 172, which was handed down by this court after the trial of the case at bar, and the trial court, in view of that opinion, thought he had committed an error in taking the case from the jury on the ground of plaintiff's contributory negligence. From this it would seem that the district judge construed that opinion as holding that contributory negligence was not a defense in such a case. The statute relied upon in this case as barring the defense of contributory negligence, reads: "Every corporation constructing or operating a railway shall make proper cattle guards where the same enters or leaves any improved or fenced land and construct at all points where such railway crosses any public highway, good, sufficient, and safe crossings and cattle guards; and erect at such points at a sufficient elevation from said highway to admit of free passage of vehicles of every kind, a sign with large and distinct letters, placed thereon to give notice of the proximity of the railway and warn persons of the necessity of looking out for the cars; and any railway company neglecting or refusing to comply with the provisions of this section shall be liable for all damages sustained by reason of such neglect and refusal, and in order for the injured party to recover it shall only be necessary for him to prove such neglect or refusal." Code, section 1288. In the recent case of *Ford v. Railway Co.*, 91 Iowa,

179, 59 N. W. Rep. 5, this question was fully considered, and we there held that contributory negligence was a defense under this section of the statute. We said: "It seems to us clear that section 1288 of the Code imposes certain duties on railroad companies. For a failure to perform them, resulting in damages, an action lies; and recovery may be had by proving the neglect or refusal, and that the party was injured as a result thereof. When this is done, a *prima facie* case is made, which, in the absence of testimony by the defendant, the statute provides shall be sufficient to warrant a recovery. The defendant, however, may establish any defense it may have, including contributory negligence of plaintiff's intestate." In that case all the cases bearing upon this question were considered and discussed. The conclusion therein reached we still adhere to as being based upon a proper construction of the statute, and we have no desire to depart from it. . See *Croddy v. Railway Co.*, 91 Iowa, 598, 60 N. W. Rep. 214.

III. Appellee contends that the court properly sustained the motion for a new trial, even if contributory negligence is a defense. It may be conceded that ordinarily the question of contributory negligence is one of fact for the jury. Generally, as to such questions, the evidence is conflicting. True it is that even where the facts are undisputed the question as to whether a party has been guilty of contributory negligence is not necessarily one of law. The rule is that "if the facts are such that but one conclusion can reasonably be drawn from them, then it is the province of the court to determine that conclusion; but if different minds might reasonably reach different conclusions from them, the parties are entitled to have the question determined by the jury." *Whitsett v. Railroad Co.*, 67 Iowa, 159, 25 N. W. Rep. 104, and cases cited. Plaintiff went to the town of George about 4 o'clock

p. m. for a load of coal, got his load—about a ton—and started for home about half an hour before train time. When within thirty-five or forty rods of the highway which crosses the railroad, he came to a schoolhouse near the top of a hill; and when within about twenty rods of the crossing he looked up the track to see if the train was coming, but did not see it. It was down hill from the schoolhouse to the crossing, a gradual slope to the bottom of a small ditch, from which it was slightly up grade to the railroad track. When he was on top of the hill he started towards the crossing on a trot, and the team continued to trot until they struck the crossing, increasing in speed as they approached it. The small ditch we have spoken of was caused by the raising of the dump of the railroad, and was from ten to twenty feet from the track. He did not stop, look or listen, or make any effort whatever to protect himself for a distance of twenty rods before reaching the crossing. When within a few feet of the track, and too near to stop in time to have prevented the accident, he saw the train, and attempted to stop his team, but it was too late. He was sitting in a seat on his wagon, and his eyes must have been six or seven feet above the surface of the ground. He testified that there was nothing to obscure his vision for sixty feet from the track. He knew when he left town for home that the train had not passed, and that it was only about half an hour until it was due. He had not seen or heard it on his way home, and he must have known that at the rate at which he was driving he would reach the crossing at about train time. He says he had "no thought of the train, for he thought it had gone, or else was not in sight." He had lived in sight of this crossing ever since the railroad was built; had crossed at that place often. When the team was trotting down toward the track he made no effort to check their speed, not until he saw the train, and

the horses were on the track. The headlight of the engine was burning. His eyesight was good, but he was a little deaf. Shortly after the accident he examined to see if he could find out whether he could see the train, and found that "there was one place there where the train went out of sight except the top of the hill." The ground, looking toward the railroad from the highway, was nearly level. He claims that a field of corn interfered with his seeing the train until he got within a short distance of the track; also that when he was twenty rods away from the crossing he could not see the train, because it was in a "sag." There is no dispute as to the facts. There is, and from the testimony can be, no question that if he had looked for the train when he reached the cornfield adjacent to the track, he would have seen it approaching and could have avoided the accident if he had been driving with that degree of care one should exercise when he knows he is near a railroad crossing. Knowing that the train was due, being familiar with the crossing and its surroundings, plaintiff proceeded to trot his team down the decline, going faster as he approached a place of known danger, and without making an effort to avoid injury. From all the facts, we see no escape from the conclusion that plaintiff was not only negligent in such a way as to contribute directly to the injury of which he now complains, but he seems to have been entirely wanting in the exercise of the slighest care for his safety. There are no facts in this case which remove it from the application of the general rule as to travelers about to cross a railway track, requiring them to stop, to look or to listen for approaching trains. There was no necessity for driving rapidly to the track; there was nothing to have prevented stopping and looking at a reasonable distance from the track; nothing to divert his attention. It was a plain case of gross negligence, which produced the damage of which

plaintiff complains. *Nixon v. Railroad Co.*, 84 Iowa, 333, 51 N. W. Rep. 157, and cases cited; *Banning v. Railroad Co.*, 89 Iowa, 74, 56 N. W. Rep. 277, and cases cited. The court erred in sustaining the motion for a new trial.

IV. We need not discuss the questions raised on the rulings rejecting testimony. They are not argued. REVERSED.