R. C. PRATT, Administrator, Appellant, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

**Negligence: RAILROADS:** *Jury question.* A railroad company is not, as matter of law, free from negligence in running a train without signals through a town with a population of about eleven hundred, at the rate of forty miles an hour, which is much faster than the usual rate, across a much traveled street, where the view of the railroad, from some direction, is obstructed.

**CONTRIBUTORY NEGLIGENCE:** *Jury question.* One is not, as matter of law, guilty of contributory negligence in failing to stop and look before driving across a railroad track, knowing the crossing to exist, where his team is running and he has all he can do to stop it, and the train, by collision with which he is injured, is running at an unusual rate of speed, without giving any signals.

*Appeal from Cass District Court.*—HON. SCOTT LEWIS, Judge.

TUESDAY, MAY 26, 1896.

ACTION for personal injuries. Judgment for the defendant, and the plaintiff appealed.—*Reversed.*

*Swan & Bruce* for appellant.

*G. E. McCaughan* and *R. G. Phelps* for appellee.

GRANGER, J.—Plaintiff's intestate was one, W. H. Stone. Stone resided a few miles from Anita, a town situated in Cass county, Iowa. Through the town passes the defendant's line of road. On the tenth day

of March, 1894, Stone, with his wife, drove from his farm to Anita, and on reaching the town he left his wife at a store to trade, while he drove to a mill for some bran, intending to return in fifteen minutes. His route, from the store to the mill, was across defendant's road, and on his return, when crossing the track, his wagon was struck by a passenger train, and he was killed. This action is for the damage sustained. The petition alleges negligence in different ways, and among them a failure to give signals as the train approached the crossing, and the running of the train at too high a rate of speed. At the conclusion of plaintiff's evidence, the court, on motion of defendant, directed a verdict in its favor, and it is as to the correctness of this ruling that we are asked to decide. The motion presented for the court's consideration a question of the contributory negligence of Stone, and also of the negligence of the defendant.

If the state of the record is such that, had the cause been submitted on the evidence taken, a verdict for the plaintiff could not have been sustained, either for want of evidence to show that the injury resulted from defendant's negligence, or that Stone's negligence did not contribute thereto, the action of the court must be sustained. But if, on the contrary, there was such evidence that the jury might properly say that Stone's negligence did not contribute to his injury, and that it was caused by defendant's negligence, then the order directing a verdict was erroneous. The ruling on the motion was general, so that we do not know whether the court found that there was a failure to prove the negligence of the defendant, or to disprove negligence by Stone, or both; and, in view of our conclusion, it is necessary that we indicate our view of the tendency, and, to some extent, the effect, of the evidence as to both particulars. As to the negligence of the defendant,

it is charged that the train was run at too high a rate of speed, and the signals were not given. The crossing on which Stone was struck is on Chestnut street, and the mill, to which he had been, was south of the track. On defendant's right of way, south of the track, is a corncrib, some two hundred and forty-seven feet in length, so situated as to obstruct a view of the track, and of approaching trains, from the east, when persons are approaching the crossing in question from the south; that is, the obstruction existed for some part of the way. The crossing is in the town, and it is one of frequent use. The train in question did not stop at Anita, it being the "Limited"; and the testimony shows that it was going, when it struck the wagon, at from twenty-five to forty miles an hour. For the purposes of the motion, we must take the latter rate of speed, for the jury might have so found. The testimony shows that the train whistled at the whistling post for the station, but not thereafter till it struck the wagon; and it further shows that it was on time, and running at an unusual rate of speed. Speaking alone, with reference to negligence in operating the train, there is nothing to lessen the effect of the facts stated as showing negligence. It is not to be said that facts which show the running of a train through a town of about one thousand one hundred people, at the rate of forty miles an hour, and faster than the usual rate, across a street much used, and where the view from some directions is obstructed, without any signals of warning, do not raise a question for the jury. In fact, the proposition is so clear that we incline to the view that the action of the court must have been based on the proposition as to contributory negligence.

The evidence as to contributory negligence is not so conclusive against the ruling of the court, but we think it such that the cause should have been

submitted to the jury. As we have said, the mill to which Stone had been was on the south side of the track. As he left the mill, his course was west to Chestnut street, and then north across the track. As he drove west, the corncrib was between him and the track, and was of such height as to nearly, or quite, prevent seeing a train until he passed the crib. As he was leaving the mill, the exhaust from a steam pipe at the mill frightened his team; and the testimony shows that, as he turned north on Chestnut street, he arose from the seat to a standing position, and wrapped the lines around his hands in trying to manage it. The following is from the testimony of one witness: "Was acquainted with W. H. Stone during his lifetime. Saw W. H. Stone both dead and alive on the tenth of last March. First saw him coming around the northeast corner of the mill. He had a lumber wagon, and a team of horses hitched to it. His team was running with him. I was standing somewhere about one hundred feet south of the track, and on the west side of the highway running north and south. I was probably three hundred feet from him when I first saw his team. The team first ran west along the length of the crib; then turned north. The team followed the wagon track. He was trying to hold his team, and they were running with him, and just at the west end of the corncrib he raised up in the wagon, and wound the lines around his hands, to get a better hold on the lines, to hold the team. That team was running as they approached the railroad track. At about that time I saw the train, known as the 'Flyer.' First saw it about 150 feet east of the crossing. The train gave no signals, either by ringing the bell or blowing the whistle, as it approached the crossing, until after they struck the wagon. If they had given a signal, I should have heard it. The train struck the wagon just back of the

front wheels. The end of the engine struck Stone, and he lit on the pilot of the engine." There is other testimony much to the same effect, and little, if any, to, in any way, contradict it. As to the gait of the team, the witnesses use different expressions, such as "prancing," "galloping," and "running;" so that there may be some question as to the exact conduct of the team, and how difficult it was to manage it. In such a case we are to assume, as true, that state of facts most favorable to the plaintiff, having support in the evidence. Much reliance is placed on the fact, that Stone did not use the precaution that ordinarily should be used, to know of the approaching train. It is true, that he did not stop and look, and likely true, that he did not even look. It is also true, that he knew of the crossing, and was as fully put on guard for his safety, so far as knowledge of the surroundings and location was concerned, as any person need be to come under the rule as to diligence in crossing the road. If we assume these facts, we are still confronted with proof of facts from which a want of negligence contributing to the injury may be found. It does not appear that Stone knew of the schedule time of the train. Let us assume that he was not able to stop his team, or that it required his entire attention for its management. The law required that he should exercise ordinary care, — such care as an ordinarily reasonable and prudent man would use under the same circumstances. There is evidence from which it could be found that, from the time the team left the mill it was running, and that Stone was doing all that he could to stop or control it. After he was dead, a piece of the line was found still wound around his hand. In the testimony different expressions are used, as that he "pulled" and "sawed" with the lines to check the speed. He was on the line of road that he proposed to travel, and where he had a right to be.

It seems to us that the state of facts entitled the plaintiff to a finding of the jury on the question of his intestate's negligence. There is no legal proposition in dispute or doubt.

We realize the danger of discussing facts or evidence where a case is to be retried, and we intend to avoid it as far as we reasonably can. There is an extended argument involving other facts, but, throughout, it deals, as it must, with conflicting facts and evidence, and is better adapted for presentation to a tribunal authorized to settle conflicts of fact than to one that must, because of the question before it, assume all such facts in favor of one party. It seems to us that the case should be so submitted as to afford an application of the rule stated in *Nixon v. Railway Co.*, 84 Iowa, 331 (51 N. W. Rep. 157). It is there said: "The traveler may be placed without his fault, in some dilemma, some place of danger, where the exigencies of his situation and an emergency may excuse him from going on the track without looking and listening." It cites cases supporting the rule, and it is one not to be doubted. We are not to be understood, in the further trial of this case, as holding that the facts as we have stated them appear, when all the evidence is considered, for we have not considered conflicting evidence, nor is it our right to do so. We have assumed the facts as favorable to plaintiff that were, under the evidence, in doubt. There is nothing in the evidence to indicate that, had the case been submitted to the jury, with the rule we have suggested, it would not have been done under proper instructions as to the law, and there are no complaints as to error in the admission of evidence. The judgment.is.REVERSED.